575 So.2d 239 (1991)
Ben S. CARLTON and Winston C. Carlton, Appellants,
v.
Barbara B. CARLTON and Charles R. Baumann, Co-Personal Representatives of the Estate of T. Mabry Carlton, Jr., Deceased, Appellees.
No. 90-01542.
District Court of Appeal of Florida, Second District.
February 6, 1991.
Stevan T. Northcutt of Levine, Hirsch, Segall & Northcutt, P.A., Tampa, and W. Russell Snyder of Snyder & Groner, Venice, for appellants.
A. Lamar Matthews, Jr., Theodore C. Eastmoore and Arthur S. Hardy of Williams, Parker, Harrison, Dietz & Getzen, Sarasota, for appellees.
CAMPBELL, Acting Chief Judge.
In this appeal, appellants, Ben S. Carlton and Winston C. Carlton, challenge the final order that dismissed their complaint against appellees, Barbara B. Carlton and Charles R. Baumann, co-personal representatives of the estate of T. Mabry Carlton, Jr., the deceased brother of appellants. For the following reasons, we reverse and remand for further proceedings below.
The parties to the events leading to these proceedings represent one of Florida's oldest and most respected families. Directly involved in those events were: T. Mabry Carlton, Sr. ("Jack"); his wife, Septa; and their three sons, T. Mabry Carlton, Jr. (Mabry), now deceased, and appellants, Ben S. and Winston C. Carlton. Appellee, Barbara *240 B. Carlton, is Mabry's widow and co-personal representative of his estate. Jack and Septa are both in their eighties. Septa suffers from Alzheimer's disease and has been judicially declared incompetent. Mabry died in an airplane crash in June 1989. On January 30, 1990, Mabry's two brothers, appellants, filed a one-count complaint, styled "Complaint for Damages for Intentional Interference with Expectancies" against appellees as co-personal representatives of Mabry's estate.
Appellants base their cause of action on allegations of various actions of their brother, Mabry Carlton, that allegedly interfered with their expectancies in their parents' estates and other rights or properties of appellants. They further allege that they did not and could not have reasonably discovered the existence of their cause of action until the facts came to light following Mabry's death in June 1989. Appellants' complaint contains fifty-nine separately numbered paragraphs in which they allege, among other things: In 1959, Jack and Septa Carlton transferred their ownership in 17,500 acres of ranch lands to a family corporation, Mabry Carlton & Sons Ranch, Inc.; Mabry Carlton intentionally interfered with appellants' expectancies in their parents' estates; their parents had a lifelong fixed intent to treat all their sons equally in the final distribution of the parents' estates based on generations of "equal inheritance" in the Carlton family and as evidenced by wills executed in 1981; Mabry Carlton had a confidential and dominant relationship with his parents and his brothers; Mabry influenced his parents to execute new wills in 1982 which excluded appellant Ben Carlton and his family from the parents' estates; Mabry caused Ben Carlton to execute an irrevocable trust placing the ranch stock he had received from his parents into the trust for the benefit of Ben's daughters; Mabry caused his parents in 1983 to execute codicils to their wills that excluded appellant Winston Carlton and his family from the parents' estates; Mabry caused Winston to execute irrevocable trusts placing all of the ranch stock from his parents into the trust for the benefit of Winston's daughters; Mabry interfered in Ben's dissolution of marriage proceedings to Ben's disadvantage and ultimate bankruptcy; Mabry managed the family ranch so as to personally absorb most of the income from the ranch; Mabry actively caused the ranch corporation to procure the redemption of the ranch stock held by the irrevocable trusts of Winston and Ben at less than the true value of the stock; by causing Mabry Carlton & Sons Ranch, Inc. to redeem other outstanding stock in the family corporation, Mabry and his immediate family became the sole stockholders in the corporation, thereby controlling its $15,000,000 in assets to the exclusion of his parents and brothers; appellants have, by Mabry's actions, lost substantial portions of their expectancies in their parents' estates; Septa has Alzheimer's disease and has been judicially declared incompetent; and Mabry's actions were intentional, willful, malicious and done with conscious indifference to appellants' rights, greatly damaging appellants.
Finally, appellants' complaint contained a prayer for general damages against appellees as co-personal representatives of Mabry's estate. Appellants' complaint is not a textbook example of pleadings in that it apparently attempts to allege, in one count, several causes of action growing out of the tort of intentional interference with appellants' expectancies in their parents' estates as well as actions arising out of undue influence and breach of an alleged confidential relationship regarding appellants' rights and properties unconnected to their parents' potential estates.
Our primary concern in this appeal is not whether or what or even how many causes of action appellants have attempted to allege in their complaint. The trial judge dismissed appellants' attempt to allege a cause of action solely on the basis that the action could not be maintained until such time as one or both of appellants' parents was deceased. Florida has for some time recognized the right to a cause of action based upon the tort of intentional interference with an expected gift or inheritance. Dewitt v. Duce, 408 So.2d 216 (Fla. 1981); Watts v. Haun, 393 So.2d 54 (Fla. 2d DCA 1981); Davison v. Feuerherd, 391 So.2d 799 (Fla. 2d DCA 1980); Allen v. Leybourne, 190 So.2d 825 (Fla. 3d DCA 1966). *241 The sole issue presented to us by the ruling of the trial judge is whether such an action as is attempted to be alleged here is maintainable prior to the death of the grantors of the expected inheritance. As the court stated in the seminal case of Allen:
It has been established in Florida that the fact that there is not a right of action against the person who is induced or influenced to refuse to perform his agreement is not of itself a bar to an action against the third person maliciously and wantonly procuring the termination of or a refusal to perform the agreement.
190 So.2d at 828. Moreover, the Allen court also stated:
It is our opinion that when there is an allegation that the testator had a fixed intention to make a bequest in favor of the plaintiff and there existed a strong probability that this intention would have been carried out but for the wrongful acts of the defendant there exists a cause of action. While it is true that such a cause of action is difficult to prove, that does not affect the existence of a ground of tort liability. Thus, it was error to dismiss the count in the complaint charging interference with an expected bequest without leave to amend and in denying plaintiff's motion for leave to amend.
190 So.2d at 829.
Appellants argued below and here that the circumstances surrounding their cause of action make it presently viable regardless of whether their parents are still living. We agree, not only in regard to appellants' expectations in their parents' future estates, but particularly in regard to the unresolved or unrecompensed claims that involve their separate rights and property interests that have been allegedly damaged and that are unrelated to their parents' future probate estate and, therefore, do not depend upon their parents' deaths to come into being.
Appellants have relied heavily on the decision of the Supreme Court of Maine in Harmon v. Harmon, 404 A.2d 1020 (Me. 1979), where it was held that an action for tortious interference with an expected inheritance can be maintained prior to the death of the testator whose future estate is the subject of the tortious interference. Appellees, on the other hand, warn us against expanding the law of Florida to allow pursuit of an action for intentional interference with an expectancy while the potential grantor of that expectancy remains alive. Appellees argue that Harmon is, as its own language indicates, "somewhere near the frontier of the expanding field of law relating to tortious interference with an advantageous relationship... ." 404 A.2d at 1021. Appellees argue that Florida has adhered to the rule that the tort of intentional interference with expectancies has been allowed to be prosecuted only where the potential grantor has died and available probate remedies are inadequate to compensate the expectant grantee. Dewitt, 408 So.2d at 216; Davison, 391 So.2d at 799.
The cases relied upon by appellees give some support to their argument. However, there are two factors which cause us to be unpersuaded by that argument. The first factor is that both Dewitt and Davison were cases which were defended on the basis that the action for tortious interference was barred because it represented a collateral attack on previous probate proceedings. We are not concerned with such a collateral attack because we have no prior probate proceeding. The second factor, so unique to the case before us is, to us, controlling and requires us to reverse the ruling of the trial judge.
The uniqueness of this case is the fact that T. Mabry Carlton, Jr., the alleged tort-feasor who is alleged to have improperly interfered in appellants' expectations in their parents' estates, has himself predeceased the parents. Therefore, appellants' rights to recompense for Mabry Carlton's alleged torts has ripened prior to the death of their parents. This unique circumstance brings into play chapter 733, Florida Statutes (1988), Florida's Probate Code, which we determine requires that appellants pursue their cause of action against the estate of T. Mabry Carlton, Jr., within the time *242 requirements of chapter 733 or lose their cause of action forever. Section 733.702(1), Florida Statutes (1988) specifically provides that no claim or demand against a decedent's estate that arose before the death of the decedent, whether the claim be due or not, direct or contingent, or liquidated or unliquidated, and no claim for damages including actions for fraud or other wrongful acts or omissions of the decedent, is binding on either the estate, the personal representative or any beneficiary unless presented against the estate within the time limitations and in the manner required by chapter 733.
Section 733.702(3) provides that any claim not timely filed as required by section 733.702 is forever barred, and no independent action or declaratory action may be taken upon such a barred claim.
Section 733.705, Florida Statutes (1988) provides for the manner of filing claims against an estate whether such claims are mature or not or contingent or not. Section 733.705 provides detailed instruction and requirements as to how such claims shall be handled and, if objected to by the personal representative, how an independent action on such claims shall be brought. It is not disputed in these proceedings that appellants filed their claims against Mabry's estate, the claims were objected to by appellees and this resulting independent action below was commenced by appellants.
The supreme court in both Fowler v. Hartridge, 156 Fla. 585, 24 So.2d 306 (1945) and American Surety Co. of New York v. Murphy, 151 Fla. 151, 9 So.2d 355 (1942), spoke to the necessity of filing all claims, whether contingent or not, according to the requirements of chapter 733 and its predecessor statutes. The court clearly stated that the debts or demands which must be filed in a probate estate are all inclusive. In Fowler, the court said:
A question immediately suggested to our mind is what character of claim, if any, Hartridge had against Cunningham's estate. Having reached the conclusion which we will presently state, we are of the view that it is not necessary for us to determine in this case whether Hartridge did or did not have a claim against the estate. We are of the opinion that the statute of nonclaim, then in existence and applicable to this case, precluded the consideration of Hartridge's claim regardless of its character. [Citation omitted.] The law universally favors promptness in closing estates. We have held the phrase, debt or demand to be all comprehensive. [Citations omitted.]
In the case of American Surety Co. of New York v. Murphy et al., 151 Fla. 151, 9 So.2d 355, 357, we were dealing with the 1933 Probate Act, F.S.A. § 731.01 et seq., nevertheless the language employed is equally applicable here. There a claim was made on a replevin bond executed for the deceased and paid by the surety after the period allowed for filing claims.
We said: "A contingent claim is one where the liability depends upon some future event, which may or may not happen, which renders it uncertain whether there ever will be a liability. Nonclaim statutes have been applied to claims arising from a breach of covenant in a deed; to guaranty, suretyship and endorsement contracts; obligations contained in a lease; breach of contract to convey land; * * *." [Citation omitted.] It is our conclusion that no matter what the character of Hartridge's claim was it was barred by the statute of nonclaim, supra. [Citations omitted.]
24 So.2d at 309.
We, therefore, conclude that appellants were required to file their action against appellees as co-personal representatives of the estate of T. Mabry Carlton, Jr. within the time constraints of chapter 733 or their action would be forever barred. The Supreme Court of Florida so held in regard to a contingent claim in Furlong v. Leybourne, 171 So.2d 1 (Fla. 1964). The fourth district has likewise ruled in Simpson v. First Nat'l Bank & Trust Co. of Lake Worth, 318 So.2d 209 (Fla. 4th DCA 1975).
We do not, by our holdings or discussion herein, determine at this time the questions, if any, of the contingency or *243 maturity of appellants' claims. We do observe, however, that the first district in Albritton v. Gandy, 531 So.2d 381, 388 (Fla. 1st DCA 1988), has recognized that one of the elements of damage in an action for intentional interference with the rights or expectancies of another is for the mental or emotional distress that may result from such interference. Such damages may be for past or future emotional distress but, nevertheless, subject to a present determination. Such a claim for emotional distress for intentional interference is a claim that would lie solely against the tort-feasor and would never be a claim against the estate of the grantor of the expected inheritance. Regardless of the possible contingent nature of some of appellants' claims, they are presently compensable, if proved, from the estate of the alleged tort-feasor, T. Mabry Carlton, Jr. The proof may be difficult or even impossible, but the cause of action, if properly alleged, is now maintainable.
We, therefore, reverse and remand for future proceedings below consistent with this opinion.
FRANK and THREADGILL, JJ., concur.