719 So.2d 2 (1998)
Richard and Eva WHALEN, Appellants,
v.
Duane and Garnett PROSSER, Appellees.
No. 97-03165.
District Court of Appeal of Florida, Second District.
July 29, 1998.
Rehearing Denied October 9, 1998.
*3 W. Russell Snyder and Charles L. Scalise of W. Russell Snyder, P.A., Venice; and Jay E. Bailey, Sarasota, co-counsel for Appellants.
Mary L. Geer, Port Charlotte, for Appellees.
ALTENBERND, Judge.
Richard and Eva Whalen appeal an order dismissing with prejudice their complaint against Duane and Garnett Prosser. The controlling issue in this case is whether an action for intentional interference with an expectancy of inheritance may be filed by a nonfamily member prior to the death of the testator under circumstances that do not suggest that a remedy subsequent to death will be unavailable or inadequate. In Carlton v. Carlton, 575 So.2d 239 (Fla. 2d DCA 1991), this court allowed the filing of an action between members of a family because the alleged tortfeasor had died while the testators were still living. The contingent claim against the tortfeasor's estate by the various relatives would have been barred if an action had not been permitted prior to the death of the testators. Although the Whalens forcefully argue that this court should take the next "small step" to permit lawsuits at any time prior to the testator's death as a general rule to protect all heirs and beneficiaries, we fear that this small step for the Whalens could be a giant leap toward unwarranted interference into the private and personal decisions of living testators. See generally Shriners Hosps. v. Zrillic, 563 So.2d 64 (Fla. 1990) (declaring Mortmain statute unconstitutional as restraint on testator's right to devise property). Accordingly, we affirm this dismissal.

I. THE FACTUAL ALLEGATIONS
The record in this case is limited to a complaint, a first amended complaint, the motions to dismiss these pleadings, and the order of dismissal with prejudice. There are no exhibits or attachments to the pleadings, and no discovery in the record. In affirming this dismissal, we assume the truth of the Whalens' pleadings, recognizing that it is likely that the Prossers would dispute many of the factual allegations.
The Whalens' first amended complaint alleges that William Hall gave Mr. Whalen his first job in Ohio in 1950. The two men developed a deep and longstanding friendship. The Halls had no children, and Mr. Whalen became a surrogate son of the Halls. This friendship expanded to include the two men's wives.
The Whalens moved to Clearwater, Florida, in 1968. Mr. Hall died in 1979. It is unclear when Mrs. Hall moved to Clearwater, *4 but she lived there for a significant period. Mrs. Hall's sister, Sally Reynolds, moved to Clearwater in the early 1980s, and the Whalens became good friends with her. The Whalens treated these two sisters like older members of their own extended family.
Until 1996, Mr. Whalen had a power of attorney that gave him the ability to act on behalf of one or both of these women. The Whalens allege that they were familiar with the women's estate planning documents in early 1996. They claim that Mr. Whalen was a residuary beneficiary for the estate of each woman and that Mrs. Whalen was a beneficiary of each estate. They also allege that the sisters established a joint trust funded by virtually all of their assets.[1] The trust specified that the Whalens were to receive the bulk of the remaining trust assets following the deaths of both women. Mrs. Reynolds died in early 1996, but this event did not cause the Whalens to receive any significant inheritance under the women's joint estate plan.
Mrs. Prosser was the niece of Mr. Hall. During the winters between 1982 and 1990, the Prossers would occasionally visit Mrs. Hall. Allegedly, they would inquire of the two sisters about their estate plans. Neither woman wanted the Prossers involved in these affairs. In 1990, the Prossers moved to Charlotte County, Florida.
In early March 1996, the Prossers moved Mrs. Hall to Charlotte County. The Whalens contend that, after Mrs. Reynold's death, Mrs. Hall was in no mental condition to make changes to her estate. Nevertheless, the Prossers retained an attorney for Mrs. Hall, and were present at meetings between the attorney and Mrs. Hall. Mrs. Hall revoked Mr. Whalen's power of attorney. She executed new estate plan documents that give the Whalens a nominal inheritance and give the Prossers the bulk of the residual estate.
The first amended complaint alleges that, prior to the change in these documents, both Mrs. Reynolds and Mrs. Hall had a fixed intention to leave the bulk of their estates to the Whalens and that these intentions were thwarted by the intentional interference of the Prossers. The complaint alleges that Mrs. Hall lacked capacity to execute new documents, and that she signed these documents under the undue influence of the Prossers. Mrs. Hall is not a party to this action. The identity of the attorney who prepared the new estate plan documents is not disclosed. Nothing in the record suggests that Mrs. Hall has been declared incapacitated or that any guardian has been appointed to function in any capacity for her. In addition, nothing suggests that she could not or has not changed her estate plan since this action was filed.

II. INTENTIONAL INTERFERENCE WITH AN EXPECTANCY OF INHERITANCE: A BENEFICIARY'S TORT PROTECTING THE TESTATOR'S INTEREST
Intentional interference with an expectancy is a relatively new and undeveloped tort. See Nita Ledford, Intentional Interference with Inheritance, 30 Real Prop. Prob. & Tr. J. 3235 (1995). It apparently evolved from the commercial tort of interference with prospective advantage. William L. Prosser, The Law of Torts 949-50 (4th ed.1971). Earlier cases declined to expand the tort of interference to issues of inheritance, largely because the issues of causation and damages were so speculative. See Hutchins v. Hutchins, 7 Hill 104 (N.Y.1845). This tort was not described in the original Restatement of Torts, but was added to the Restatement (Second) of Torts as section 774B (1977). The tort was first recognized in Florida in 1966. See Allen v. Leybourne, 190 So.2d 825 (Fla.1966).[2] Now the tort is recognized in about half of the states with varying restrictions and limitations. See Marilyn Marmai, *5 Tortious Interference with Inheritance: Primary Remedy or Last Recourse, 5 Conn. Prob. L.J. 295 (1991).
The elements of this evolving tort include: (1) the existence of an expectancy; (2) intentional interference with the expectancy through tortious conduct; (3) causation; and (4) damages. See Davison v. Feuerherd, 391 So.2d 799 (Fla. 2d DCA 1980); Ledford, supra. The Whalens argue that these are the only elements of the tort and are sufficient to state a cause of action even prior to the testator's death.
Although allowing an action prior to the testator's death might simplify proof concerning the issue of interference, it would make the issues of causation and damages even more speculative and would present other difficulties. Outside the exceptional circumstances in Carlton, 575 So.2d 239, only Maine has allowed the pre-death cause of action. See Harmon v. Harmon, 404 A.2d 1020 (Me.1979). In Harmon, the issue was whether a family member of the testator could file such an action. While authorizing such an intra-familial tort, the court admitted it was on the "frontier of the expanding field of law." 404 A.2d 1020. Other courts have expressly prohibited such an action. See Labonte v. Giordano, 426 Mass. 319, 687 N.E.2d 1253 (1997); Schneider v. David, 197 A.D.2d 363, 602 N.Y.S.2d 130 (1993).
We decline to permit this pre-death action by a non-family member for reasons both practical and theoretical. As a matter of legal theory, one typically has no protectable interest in a mere expectancy. See W.R. Grace & Co. v. Geodata Servs., Inc., 547 So.2d 919 (Fla.1989) (holding that mere expectations are not sufficient to establish promissory estoppel); Balcor Property Management, Inc. v. Ahronovitz, 634 So.2d 277 (Fla. 4th DCA 1994) (shareholder's mere expectation that equipment could have been used to satisfy judgment he would eventually obtain against corporation was too speculative to support civil theft claim); City of Clearwater v. Bekker, 526 So.2d 961(Fla. 2d DCA 1988) (employees' mere expectation insufficient to create binding contract); cf. Shiveley v. Shiveley, 635 So.2d 1021, 1022 (Fla. 1st DCA 1994) (unreceived gifts are mere expectancy and not property in divorce). A competent testator is free to change his or her estate plan as often as he or she wishes. There is no guarantee that the testator's estate will contain any assets at the time of a future death. Thus, prior to death, the hope of an inheritance is not sufficiently concrete to create a property right. The disappointed beneficiary only obtains "vested" rights when the testator dies. See Brown v. Kirkham, 926 S.W.2d 197 (Mo.Ct. App.1996).[3] We are not inclined to believe that proposed beneficiaries in earlier estate plans, such as the Whalens, should be permitted to sue the new beneficiaries for mental pain and suffering, and possibly punitive damages,[4] when the testator is alive, competent, and entitled to exercise her own testamentary rights.
*6 Interference with an expectancy is an unusual tort because the beneficiary is authorized to sue to recover damages primarily to protect the testator's interest rather than the disappointed beneficiary's expectations. The fraud, duress, undue influence, or other independent tortious conduct required for this tort is directed at the testator. The beneficiary is not directly defrauded or unduly influenced; the testator is. Thus, the common law court has created this cause of action not primarily to protect the beneficiary's inchoate rights, but to protect the deceased testator's former right to dispose of property freely and without improper interference. In a sense, the beneficiary's action is derivative of the testator's rights.[5]
When a will is the product of undue influence or fraud, it is subject to challenge in a probate proceeding. See § 732.5165, Fla. Stat. (1997). Likewise, a revocable trust can be challenged for similar reasons once it has become irrevocable. See § 737.206 Fla. Stat. (1997). Such an action is often an acceptable safeguard of the deceased testator's interests. The remedy provided by such an action, however, is not always certain to be adequate, and it may not serve as a sufficient deterrent to all persons who are tempted to use tortious means to modify an estate plan. See Curtis E. Shirley, Tortious Interference With An Expectancy, 41-Oct. Res Gestae 16 (1997). As a result of these considerations, although the law recognizes interference with an expectation as an intentional tort between litigants other than the testator, there is a tendency to prefer that such inheritance disputes be resolved in post-death proceedings and to allow the tort only in circumstances in which no adequate, alternative remedy exists. Ledford, Marmai, supra. Cf. DeWitt v. Duce, 408 So.2d 216 (Fla.1981) (discussing relationship between probate action and tort claim). The Whalens have not established any exceptional reason to permit this lawsuit at this time.
From a practical perspective, a pre-death tort would create numerous problems. The testator would be a mere witness, asked to testify about private conferences with her attorney. The action could concern a testator who was relatively young and in good health. Indeed, if the change in the will is the event that damages an unvested expectation, then the statute of limitations could conceivably expire long before the testator dies. A nonfamily action could be filed by a charity, a family employee, or a friend who received some small bequest in an earlier will. Damages would be extraordinarily difficult to quantify. Ironically, the lawsuit itself might cause an annoyed testator to disinherit both parties.
We recognize that exploitation of the elderly is an issue of concern in this state. See generally ch. 825, Fla. Stat. (1997). Both the courts and the legislature should continue to protect the rights of our older residents to devise property freely and without interference. During the lives of competent testators, however, we have no need to delegate this responsibility to disappointed, nonfamilial beneficiaries.
Affirmed.
FRANK, A.C.J., and FULMER, J., concur.
NOTES
[1] We have no copies of any of the estate planning documents. We assume that the trust was a typical revocable trust because the Whalens make no claim as beneficiaries with vested rights under an irrevocable trust.
[2] There are only eight cases discussing the tort in Florida:

Allen v. Leybourne, 190 So.2d 825 (Fla. 3d DCA 1966) (establishing cause of action when there is strong probability that testator's intention to make bequest to plaintiff would have been carried out but for wrongful acts of defendant). Kramer v. Freedman, 272 So.2d 195 (Fla. 3d DCA 1973) (ruling that issue of interference had been litigated in prior proceedings to revoke will).
Cooke v. Cooke, 278 So.2d 683 (Fla. 3d DCA 1973) (discussing jury instructions used to explain the tort).
Davison v. Feuerherd, 391 So.2d 799 (Fla. 2d DCA 1980) (holding that plaintiff must prove to reasonable certainty that she would have been beneficiary of trust but for defendant's malicious interference).
Watts v. Haun, 393 So.2d 54 (Fla. 2d DCA 1981) (complaint stated cause of action concerning interference with expectation to receive inter vivos gift).
DeWitt v. Duce, 408 So.2d 216 (Fla. 1981) (discussing adequacy of probate remedy and holding that tortious interference claim may be barred by outcome in prior probate proceeding).
Carlton v. Carlton, 575 So.2d 239 (Fla. 2d DCA 1991) (allowing plaintiffs to file their action because alleged tortfeasor had predeceased testators and action would be barred if not brought within the time constraints of probate statutes).
Martin v. Martin, 687 So.2d 903 (Fla. 4th DCA 1997) (distinguishing DeWitt and allowing plaintiff's post-probate claim as beneficiary of trust because trust was not incorporated into will by reference).
See also Joyce v. Lemignot, 423 So.2d 539 (Fla. 4th DCA 1982) (citing Allen v. Leybourne, 190 So.2d 825 (Fla. 3d DCA 1966) in per curiam affirmance).
[3] For purposes of a statute of limitation, this simplifies matters because the tort accrues when the testator dies or the will is filed for probate.
[4] The trial court dismissed this action prior to the stage at which the Whalens could seek punitive damages. See § 768.72, Fla. Stat. (1997).
[5] This may not be entirely accurate when the will is changed due to defamatory statements made by the defendant to the testator concerning the plaintiff. In that case, however, the lawsuit is more in the nature of a typical suit for defamation in which the consequential damages might arguably include loss of an expectation. See Restatement (Second) of Torts section 774B (1977); Rety v. Green 546 So.2d 410, 423 (Fla. 3d DCA 1989).