754 So.2d 802 (2000)
ALL CHILDREN'S HOSPITAL, INC.; The Police Athletic League of St. Petersburg; Lutheran Ministries of Florida; Florida Sheriffs Youth Ranches, Inc.; The Hospice Foundation; St. Jude Children's Research Hospital; National Wildlife Federation; and American Red Cross, Appellants,
v.
Augusta H. OWENS, Appellee.
No. 2D99-610.
District Court of Appeal of Florida, Second District.
March 29, 2000.
*803 Joseph W. Fleece, III, and Karen M. Kelly of Holland & Knight LLP, St. Petersburg, for Appellants.
George F. Wilsey of Fisher and Wilsey, P.A., St. Petersburg, for Appellee.
ALTENBERND, Acting Chief Judge.
The appellants (hereinafter "the Charities") are a few of the charitable organizations entitled to receive a share of the residue from the Estate of Mary Helen Nolan ("the Estate"). They appeal a final summary judgment entered against them in their action against Augusta H. Owens for tortious interference with an expectancy and for imposition of a constructive trust on assets allegedly possessed by Mrs. Owens. We affirm.
If these Charities, as residual beneficiaries, are ever permitted to pursue a claim against Mrs. Owens for tortious interference with an expectancy, such a claim has not yet accrued because the estate administration is still pending, similar claims are being advanced by a representative of the estate, and these Charities cannot claim to have been damaged until the distribution occurs. The Charities' right to eventually receive a share of any residue left in the estate does not give them the right to obtain a constructive trust for their own benefit over property that they claim should be within the estate. Even if the personal representative has already transferred a parcel of real estate or a sum of money to Mrs. Owens under a specific devise, we conclude the task of retrieving that property for the benefit of the Estate and all of its residual beneficiaries should be left to the personal representative or the administrator ad litem and not delegated to a small group of the beneficiaries.

I. THE LITIGATION IN CIRCUIT COURT
This is the fourth time that the Estate of Mary Helen Nolan has been a source of *804 controversy in this court. See Owens v. Swindle, 730 So.2d 684 (Fla. 2d DCA 1998) (table); Owens v. Swindle, 718 So.2d 185 (Fla. 2d DCA 1998) (table); and In re Estate of Nolan, 712 So.2d 421 (Fla. 2d DCA 1998). The basic facts for all of the cases are described in In re Estate of Nolan. In a nutshell, prior to her death in 1994, Ms. Nolan was an elderly woman with significant assets. Mrs. Owens was her caretaker. After Ms. Nolan's death, her attorney became the personal representative of her estate. He eventually came to the conclusion that Mrs. Owens may have improperly influenced a change in Ms. Nolan's will in 1993, and that Mrs. Owens and her husband may have also received questionable inter vivos transfers totaling in excess of $1.7 million. Due to a potential conflict of interest, the personal representative arranged for the appointment of an administrator ad litem to pursue any claim that the Estate might have against the Owenses. The administrator ad litem is now pursuing litigation against the Owenses, the full details of which are not disclosed by this record.
The Charities involved in this case are all residual beneficiaries of Ms. Nolan's 1993 will. There are twenty-eight charities listed as residual beneficiaries. Most of these entities are bequeathed 3.0303% of the residue. Thus, the eight charities involved in this appeal are entitled to receive about 24% of the residue. The other twenty charities, which are designated to receive 76% of the residue, are not involved in the litigation. Also absent from this action is the Estate of Ms. Nolan or any representative of the Estate.
In March 1997, the Charities filed this lawsuit, case number 97-1602, against Mrs. Owens, in the general civil division of circuit court. Count I of the complaint sought a constructive trust against assets which Mrs. Owens received as a specific devisee under the will. Count II requested damages under a theory of tortious interference with an expectancy, alleging that the inter vivos transfers from Ms. Nolan to the Owenses reduced the Charities' expected distribution under the will. Mrs. Owens filed a motion to dismiss alleging, in part, that the administrator ad litem had been given express authority to file an action for constructive trust and was the sole person with standing to pursue such an action. Mrs. Owens also filed a motion requesting that this action be abated or transferred to other divisions. In May 1997, the trial court entered an order severing the two counts and transferring count I to case number 94-2910-ES-3 in the probate division, and transferring count II to case number 96-7536-CI-08, which was the action filed by the administrator ad litem in the general division to recover funds from the Owenses.
For reasons that are unclear in our record, the parties then stipulated that the Charities could file an amended complaint, which was not consolidated with either case number 96-7536 or case number 94-2910, but remained as case number 97-1602. The amended complaint is similar in many respects to the initial complaint, except that it is drafted to contain one count alleging tortious interference and requesting both damages and a constructive trust. Mrs. Owens attacked the amended complaint with a motion to dismiss and a motion for summary judgment. The motions asserted that any challenge to the provisions of the will were time-barred and that the personal representative was the only party who could seek to recover estate assets. Mrs. Owens filed documents supporting the motion for summary judgment, establishing that the Charities were given proper notice of the probate proceeding and filed no objection to the will. The trial court granted the motion for summary judgment and entered the judgment that is now pending on appeal.

II. THE CHARITIES' LEGAL THEORIES
The Charities' amended complaint contains two unusual theories of tortious interference with an expectancy. Neither *805 theory of tortious interference is the typical claim of tortious interference "with an expected bequest" in which a plaintiff claims to have been left out of a will due to the improper actions of the defendant. See, e.g., Allen v. Leybourne, 190 So.2d 825, 826 (Fla. 3d DCA 1966). Thus, these claims warrant a closer inspection.
The Charities' first theory could be described as the "bigger piece of pie" theory. They claim that Mrs. Owens surreptitiously took in excess of $1.7 million from Ms. Nolan prior to her death. They reason that this money would have increased the residue in the estate and that their eventual payment from the estate would be larger but for this conversion. They claim that Florida recognizes a theory of tortious interference with an expectancy that permits them to pursue a monetary judgment directly against Mrs. Owens or to seek a constructive trust, as an equitable remedy, over the inter vivos transfers that she received.
The Charities' second theory could be described as the "concealed tortious specific devise" theory. Ms. Nolan's 1993 will contained a specific devise that bequeathed her home and the sum of $550,000 to Mrs. Owens. Ms. Nolan instructed her personal representative to give $50,000 of this bequest to Mrs. Owens "as soon as practicable after my death." The Charities allege that the devise was procured by undue influence, and that Ms. Nolan would not have made the specific devise if she had known about the inter vivos transfers received by the Owenses. They contend that Mrs. Owens fraudulently concealed the inter vivos transfers, thus preventing the Charities from discovering the alleged misconduct in time to file a timely objection to the specific bequest in the will. They reason that, had they filed such an objection, they would have prevailed and these additional assets would have become a part of the residual estate.[1] They request either a constructive trust of the home and all other assets devised to Mrs. Owens or an equivalent monetary judgment.[2]

III. DISCUSSION
As to both theories, we begin with the concern that the Charities are only a fraction of the residual beneficiaries. Their lawsuit seeking a monetary judgment is not a class action for all beneficiaries.[3] Given that the personal representative or the administrator ad litem can pursue claims for the benefit of all recipients under the will, this action either duplicates those efforts or is an attempt to gain an advantage over the other beneficiaries. See generally, § 731.303(2)(b)(3), Fla. Stat. (1993). We are not inclined to believe that such a lawsuit should be permitted during the pendency of the Estate, at least barring some exceptional circumstance not present in this case. Even if the Charities could obtain a constructive trust consisting of the home and the money received by Mrs. Owens for all residual beneficiaries *806 and not just for themselves, we are inclined to believe that this equitable remedy would duplicate the functions that should be performed within the probate proceeding.

a. The "Bigger Piece of Pie" Theory.
As we have previously noted, tortious interference with an expectancy is a relatively new and undeveloped tort in Florida. See Whalen v. Prosser, 719 So.2d 2 (Fla. 2d DCA 1998). We have never permitted a claim similar to the Charities' theories except perhaps in Carlton v. Carlton, 575 So.2d 239 (Fla. 2d DCA 1991). Carlton, however, is distinguishable because it involved a unique circumstance in which the tortfeasor had died and any claim against his estate needed to be filed by other members of the family within the time allowed for claims against that estate.
To support their cause of action, the Charities focus upon one sentence of dicta in DeWitt v. Duce, 408 So.2d 216, 219 (Fla.1981):
If defendant's tortious conduct had caused the testator to make an inter vivos conveyance to defendant of assets that would otherwise have been part of the estate, setting aside the will would be inappropriate redress and consequently a tort action is properly allowed. See Hegarty v. Hegarty, 52 F.Supp. 296 (D.Mass.1943); Cyr v. Cote, 396 A.2d 1013 (Me.1979).
We are inclined to believe that this statement may oversimplify the law of Maine and Massachusetts. Nevertheless, this sentence is contained within a string of general propositions concerning this developing tort, followed by the supreme courts' summary:
A pattern may be developed from this line of cases which allows the later action for tortious interference only if the circumstances surrounding the tortious conduct effectively preclude adequate relief in the probate court.

408 So.2d at 219 (emphasis supplied).
Nothing in the Charities' complaint suggests that the Estate, either through the efforts of the personal representative or the administrator ad litem, cannot adequately pursue claims against Mr. and Mrs. Owens to recover any amounts transferred to them during Ms. Nolan's life. It is the general duty of the personal representative to settle and distribute the estate. See § 733.602, Fla. Stat. (1993). The personal representative has specific statutory authority to recover estate assets and determine title to them. See § 733.607(1), Fla. Stat. (1993). We see little value in allowing the residual beneficiaries to engage in personal lawsuits to place constructive trusts upon assets that otherwise could be gathered by the personal representative and included within the inventory of the estate. Likewise, we see little value in allowing the beneficiaries to obtain personal monetary judgments that are likely to compete with the personal representative's efforts to settle and distribute the estate.
We are concerned that the "bigger piece of pie" theory could generate considerable litigation, especially intra-familial litigation, that might be engendered more by emotion than reason. Nevertheless, we do not hold that such a theory is unavailable in Florida. We have no need to answer that question today. If such a cause of action exists, damage is an essential element of the tort. See Davison v. Feuerherd, 391 So.2d 799 (Fla. 2d DCA 1980). See also William L. Prosser. Handbook of The Law of Torts § 130, at 949 (4th ed.1971); Restatement (Second) of Torts § 774B cmt. d (1979).
When a daughter is totally excluded from her mother's will or when a new will expressly reduces her inheritance, for example, she may suffer damage to a vested right when the mother dies or when the will is filed for probate. Cf. Whalen v. Prosser, 719 So.2d 2, 5 (Fla. 2d DCA 1998) (suggesting statute of limitations for typical tortious interference claim commences *807 at this time). Such a claim is derivative of the testatrix and is permitted in order to protect the testatrix's interests in freely disposing of her property.
The residual beneficiaries'"bigger piece of pie" theory, however, is different. The probate proceeding is still pending and nothing in this case convinces us that the interests of the decedent cannot be adequately protected by the personal representative and the administrator ad litem. There is no need to give these beneficiaries any equitable derivative claim at this point to protect the interests of the decedent.
The residual beneficiaries cannot claim to have sustained direct damage and could not measure the extent of any damage until the personal representative and the administrator ad litem have finished gathering all of the Estate's assets, have satisfied all of its liabilities, and have made final distributions, if any, to the residual beneficiaries. We conclude that, under these circumstances, the Charities'"bigger piece of pie" claim, if it exists, has not yet accrued. Cf. Hold v. Manzini, 736 So.2d 138 (Fla. 3d DCA 1999) (finding action for legal malpractice accrues when adverse final judgment is rendered against client; until then claim is hypothetical and damages are speculative). We thus affirm the dismissal of this claim without prejudice to the Charities' right to attempt such a claim after they have received their distribution.

b. The "Concealed Tortious Specific Devise" Theory.
We also affirm the trial court's determination that the Charities, as residual beneficiaries, cannot pursue a collateral action seeking either a monetary judgment or a constructive trust consisting of the home and other assets transferred to Mrs. Owens under the specific devise when the Charities failed to file an objection to the will in probate court. In DeWitt, 408 So.2d 216, the supreme court held that such a collateral action might be maintained if the tortious conduct precluded an adequate remedy in probate. The resolution of this issue, therefore, depends significantly upon what the supreme court regarded as an "adequate" probate remedy, and what type of fraud might be sufficient to render the probate remedy inadequate. We conclude that the Charities' failure to discover the alleged undue influence of Mrs. Owens does not render inadequate the remedy provided by section 733.212(1)(b), Florida Statutes (1993). The public policy of finality concerning devised property contained in section 733.103(2), Florida Statutes (1993), and recognized by the supreme court in DeWitt, requires that any such theory of "concealed tortious interference" be carefully restricted.[4]
The Charities have not alleged that Mrs. Owens made any representations to them that caused them to forgo their rights in the probate action. Cf. Ebeling v. Voltz, 454 So.2d 783 (Fla. 4th DCA 1984) (holding that collateral action may be maintained when beneficiary committed extrinsic fraud to prevent will contest, thus precluding adequate remedy in probate). Nor do the Charities claim that Mrs. Owens had any duty under the law to disclose her alleged misconduct to them during the period in which they were entitled to object to the will.[5] The Charities simply argue that their claimwhich is essentially a collateral action to set aside this specific *808 devise after they failed to file a timely objectionshould be permitted because Mrs. Owens concealed the inter vivos transfers.
If we were to accept the Charities' theory, it would substantially impact upon the public policy of finality advanced by section 733.103(2), Florida Statutes (1993).[6] Almost all will contests contain allegations of undue influence or duress arising out of conduct that was not disclosed or even readily apparent to the beneficiaries. Although the short period for objections under section 733.212(5) undoubtedly results in the failure of parties to pursue some valid objections, it also places all interested parties on notice that factual circumstances allowing for will contests must be rapidly and thoroughly investigated. If a collateral action could be maintained on the Charities' theory, devised property would effectively have a cloud upon its title for years after it was transferred. Third parties could never be certain that the transfer would not be voided by a court of equity. Accordingly, we affirm the trial court's dismissal of this theory because this claim states no recognized cause of action.
Affirmed.
GREEN and CASANUEVA, JJ., Concur.
NOTES
[1] We emphasize the we do not decide whether a residual beneficiary could actually challenge a specific bequest and not an entire will in a probate proceeding. The Charities' goal is to preserve the existing will while knocking out a specific bequest. This would increase the size of the residue but might not necessarily fulfill the testatrix's intent. We do not know whether any of the Charities received any bequest under any earlier will that may exist, nor do we know who may have inherited the house under any earlier will.
[2] It is unclear from our record whether the home or any portion of the $550,000 has already been transferred to Mrs. Owens by the personal representative. The pleadings imply that such a transfer has occurred.
[3] We note that during oral argument, counsel for the Charities opined that if the Charities were successful in this action, they would collect the full amount, if any, wrongfully obtained by Mrs. Owens for the benefit of all beneficiaries. They surmised the amount collected would be deposited with the probate court. However, the complaint includes only these eight Charities and requests a judgment in their favor. Thus, it does not appear that this action renders any service for the benefit of the estate, but rather seeks to further the individual financial interests of the Charities.
[4] In fact, in DeWitt v. Duce, 408 So.2d 216 (Fla.1981), the supreme court held that an adequate probate remedy existed when the appellants could have objected to the probate of the will on the basis of undue influence or lack of testamentary capacity in the probate proceeding.
[5] Cf. In re Estate of Clibbon, 735 So.2d 487 (Fla. 4th DCA 1998) (finding personal representative's failure to give notice to beneficiaries of prior will, which notice is not required by statute, did not constitute fraud that would permit reopening estate after discharge of personal representative).
[6] Section 733.103(2), Florida Statutes (1993) provides:

In any collateral action or proceeding relating to devised property, the probate of a will in Florida shall be conclusive of its due execution; that it was executed by a competent testator, free of fraud, duress, mistake and undue influence; and of the fact that the will was unrevoked on the testator's death.