J-A09009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JUNE VOGEL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ELDER A. VOGEL, JR. AND LORI SUE VOGEL, HUSBAND AND WIFE | |
| APPEAL OF: KARL VOGEL AND BARBARA GOEHRING | No. 569 WDA 2020 |

Appeal from the Order Entered July 31, 2018
In the Court of Common Pleas of Beaver County
Civil Division at No: 11417-2017

BEFORE: STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                **FILED: June 10, 2021**

The instant appeal involves four members of the Vogel family and a dispute over the Vogel family farm located in Beaver County. Appellants are Karl Vogel ("Karl") and Barbara Goehring ("Barbara") (collectively "Appellants"), children of the late Elder A. Vogel, Sr. and his widow, Appellee, June Vogel ("June"). Appellants are appealing the July 31, 2018 order entered in the Court of Common Pleas of Beaver County sustaining preliminary objections in favor of Appellees, Elder A. Vogel, Jr. ("Elder, Jr.") and his wife, Lori Sue Vogel ("Lori Sue"), and a March 13, 2020 order entered in the same court denying Appellants' motion to intervene. These

_____

[*] Retired Senior Judge assigned to the Superior Court.

orders were made final when the underlying action was marked settled and discontinued on May 8, 2020, following mediation of the remaining claims asserted by June against Elder, Jr., and Lori Sue. Following careful review, we affirm.

On November 1, 2017, June and three of her four children initiated suit by writ of summons against Elder, Jr. In a subsequent pleading, all plaintiffs asserted claims against Elder, Jr. and Lori Sue for undue influence, unjust enrichment, civil conspiracy, and fraudulent inducement, and sought preliminary and permanent injunctions. First Amended Complaint, 3/8/18, at Counts I, II, V, VI and VII, respectively. All plaintiffs except June asserted claims of intentional interference with an inheritance and intentional interference with a testamentary expectancy. *Id.* at Counts III and IV, respectively. Elder, Jr. and Lori Sue filed preliminary objections raising, *inter alia*, standing. Preliminary Objections to First Amended Complaint, 4/2/18, at ¶¶ 13-22. Specifically, the defendants contended that Karl, Barbara, and Judy[1] ("the siblings") lacked standing because they never owned any property mentioned in the First Amended Complaint and they failed to assert "a clear and present property right for which [Elder, Jr.] directly caused them injury or deprivation." *Id.* at ¶¶ 16, 22.

_____

[1] Judy Lemon was a plaintiff in the underlying action but is not a party to this appeal.

By order entered July 31, 2018, the trial court sustained the preliminary objections and dismissed all plaintiffs except June from the suit. In the accompanying opinion, the trial court explained:

Plaintiff June E. Vogel, mother of Plaintiffs Karl Vogel, Barbara Goehring, Judy Lemon, and Defendant Elder A. Vogel, Jr., owned a large farm (the "Farm") with her husband, Elder A. Vogel, Sr. located in Beaver County.[2] Plaintiffs aver that in December of 2016, Elder A. Vogel, Sr. passed leaving the entirety of the Farm to his wife June E. Vogel and just prior to his passing, June Vogel suffered medical complications and required hospitalization. It is further averred that June Vogel remained hospitalized, under intensive care, and in January of 2017 she "physically died, suffering cardiac arrest, while under medical care only to be revived shortly thereafter." Plaintiffs allege that June Vogel has limited to no memory of the time period between October 2016 and April 2017 and "remain[s] in a limited capacity beyond June 2017."

It is Plaintiffs' contention that during Elder A. Vogel, Sr.'s lifetime, "it was understood by all parties that Elder A. Vogel, Jr. would inherit the Farm subject to a life estate after both Elder A. Vogel, Sr. and June E. Vogel passed, with the remaining heirs retaining "a reversionary interest in the Farm at the conclusion of [the] life estate." Additionally, Plaintiffs aver that it was understood that while Elder A. Vogel, Jr. would inherit the Farm subject to a life estate, "the oil and gas royalties were to be excepted and reserved to June E. Vogel, and upon her death, equally divided amongst the remaining heirs." According to Plaintiffs, the original Last Will and Testaments of Elder A. Vogel, Sr. and June E. Vogel reflected their intentions with respect to the Farm and the oil and gas royalties.

On November 3, 2016, at a time during which Plaintiffs aver June E. Vogel was hospitalized "with little to no memory[,] Elder A. Vogel, Jr. had June E. Vogel assign him to become her Power

---

[2] The Farm is comprised of six parcels that total approximately 325 acres of land. **See** First Amended Complaint, 3/12/18, Exhibit C (Deed dated February 2, 2017, conveying property from June to Elder, Jr.).

of Attorney." Plaintiffs allege that June E. Vogel had previously appointed her daughter, Plaintiff Judy Lemon as her power of attorney, the November 3, 2016 power of attorney "revoked whatever powers that Judy Lemon may have previously possessed," and "was drafted by Elder A. Vogel, Jr.'s personal attorney, John Petrush, Esq. under Elder A. Vogel's direction and without input from June E. Vogel." It is further averred that on February 2, 2017, "shortly after [] June E. Vogel[] medically died and was in a severely weakened mental state[,] Elder A. Vogel, Jr. approached [her] while in the intensive care unit to sign unto himself a deed to the farm." Moreover, "on or about February 16, 2017, Defendant induced June E. Vogel to tear up her previous Last Will and Testament and sign a new Last Will and Testament which substantially gave all property to the Defendant rather than remaining heirs." Plaintiffs allege that the deed "contained no provision allotting a reversionary interest" to all of the heirs of June Vogel as had been provided in her and Elder Vogel Sr.'s original will, but it did craft an exception for oil and gas royalty payments pursuant to a pre-existing lease with PennEnergy Resources, which was reserved to June E. Vogel.

In April of 2017, June E. Vogel was discharged from the hospital into the care of Elder A. Vogel, Jr. and Susan Vogel, and Plaintiffs aver that during the time she resided with Defendants, June E. Vogel was in a "weakened state" and "beholden to their care." It is then alleged that on or about June 1, 2017, June E. Vogel was induced into assigning the remaining oil and gas royalty payments to Elder A. Vogel, Jr.

Trial Court Opinion, 7/31/18, at 1-4 (footnotes with citations to First Amended Complaint omitted) (alterations in original).

As noted above, the trial court sustained the preliminary objections to the First Amended Complaint for lack of standing and dismissed the siblings from suit. Order, 7/31/18. The order reflected that June could proceed with her claims by filing an amended complaint within twenty days. June filed a Second Amended Complaint on August 20, 2018, reasserting her claims of undue influence, unjust enrichment, civil conspiracy, and fraudulent

inducement, and seeking preliminary and permanent injunctions. Second Amended Complaint, 8/20/18.

June's claims against Elder, Jr. and Lori Sue eventually proceeded to a successful mediation held on December 19, 2019. On February 27, 2020, after the mediation but prior to the parties' execution of any settlement documents, Karl and Barbara filed a motion to intervene and stay the proceedings, indicating they had learned of an imminent settlement to which they did not accede. They argued that settlement of the case would foreclose them from seeking review of the trial court's July 2018 ruling on standing, and from pursuing their previously raised claims of interference with an inheritance and with a testamentary expectancy. By order entered March 13, 2020, the trial court denied the motion. On May 8, 2020, June, Elder, Jr., and Lori Sue filed a praecipe to settle and discontinue the underlying litigation. This timely appeal followed.[3]

The trial court directed Appellants to file a Rule 1925(b) statement and Appellants complied. In response, the trial court issued a Rule 1925(a) opinion indicating that the reasons for its orders were set forth in its Memorandum Opinion and Order of July 31, 2018, and that no further opinion was necessary. Rule 1925(a) Opinion, 9/18/20, at 1.

_____

[3] Appellants filed separate appeals from the July 31, 2018 and March 13, 2020 orders entered in the trial court. We consolidated the appeals *sua sponte.*

Appellants present five issues for our consideration:

1. Whether the trial court erred in finding that Appellants lacked standing to bring claims of undue influence, unjust enrichment, intentional interference with an inheritance, intentional interference with a testamentary expectancy, civil conspiracy, and fraudulent inducement.

2. Whether the trial court erred in finding that interference with an inheritance/testamentary expectancy is not a viable cause of action in Pennsylvania.

3. Whether the trial court erred in finding that [] Appellants did not have a substantial, direct, and immediate interest in the outcome of the litigation.

4. Whether the trial court erred when it dismissed Appellants from the case for lack of standing and later denied their petition to intervene, even though the case impacted the testamentary expectancy and interests of [] Appellants and Appellants had no other adequate or available remedy.

5. Whether the trial court erred in finding that Appellants lacked standing and denied Appellants' Petition to Intervene when the party that interfered with [] Appellants' testamentary expectancy for his own enrichment was also acting as the Power of Attorney for June Vogel.

Appellants' Brief at 3.

Appellants' first three issues, and part of their fourth issue, stem from the trial court's July 31, 2018 order sustaining the preliminary objections to the First Amended Complaint. In **_Fielder v. Spencer_**, 231 A.3d 831 (Pa. Super. 2020), this Court reiterated the scope and standard of review of an order sustaining preliminary objections as follows:

Our standard of review of an order of the trial court overruling or sustaining preliminary objections is to determine whether the trial court committed an error of law. When considering the

appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Id.* at 835-36 (quoting *Adams v. Hellings Builders, Inc.*, 146 A.3d 795, 798 (Pa. Super. 2016) (alteration and additional citation omitted)).

The trial court sustained the preliminary objections based on a determination that the siblings lacked standing. "Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." *Rellick-Smith v. Rellick*, 147 A.3d 897, 901 (Pa. Super. 2016) (citation omitted). As Appellants recognize:

For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been "aggrieved." . . . [T]he core concept [of standing] is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution to his challenge. A party is aggrieved for purposes of establishing standing when the party has a substantial, direct and immediate interest in the outcome of litigation.

Appellants' Brief at 12 (quoting *Commonwealth, Office of the Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014) (citations and internal quotations omitted)).

- 7 -

To put the standing issue in context, we examine the claims of intentional interference with an inheritance or gift and intentional interference with a testamentary expectancy to ascertain whether Appellants are, in fact, "aggrieved." Although the trial court addressed the interference claims in its July 31, 2018 opinion, this Court has since addressed these causes of action in the 2020 opinion in *Fielder*. There, we acknowledged:

> Our Supreme Court first recognized a cause of action for interference with expected inheritance in *Marshall v. De Haven*, 209 Pa. 187, 58 A. 141 (1904). The elements of the tort are as follows: (1) the testator indicated an intent to change her will to provide a described benefit to the plaintiff; (2) the defendant used fraud, misrepresentation, or undue influence to prevent execution of the intended will; (3) the defendant was successful in preventing the execution of a new will; and (4) but for the defendant's conduct, the testator would have changed her will. *Cardenas v. Schober*, 783 A.2d 317, 326 (Pa. Super. 2001), citing *Marshall*, *supra*.
>
> Subsequently, the Restatement (Second) of Torts defined a cause of action for intentional interference with an inheritance or gift as follows:
>
> > One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.
>
> Restatement of Torts (Second), § 774B. Although several states have adopted this cause of action, Pennsylvania has not expanded the doctrine to include *inter vivos* transfers as contemplated by the Restatement. "Thus, our law requires that to establish ground[s] for recovery under this cause of action, a plaintiff must demonstrate the decedent had sought to make changes in [her] will to plaintiff's benefit, and that the defendant, through means of fraud, misrepresentation, or undue influence thwarted the decedent's intent." *Hollywood*[ *v. First*

*Nat. Bank of Palmerton*, 859 A.2d 472, 478 (Pa. Super. 2004)].

*Fielder*, 231 A.3d at 836-37 (footnote omitted).

Here, Appellants have not established that Elder, Jr. or Lori Sue thwarted June's intent to make any changes to her Last Will and Testament that would have benefitted Appellants. Appellants do not allege that June expressed an intent to alter her will to benefit Appellants, or that Elder, Jr. and Lori Sue prevented the execution of such a will. Therefore, just as in *Fielder*, even assuming as true the well-pleaded facts of Appellants' First Amended Complaint and reasonable inferences drawn therefrom, Appellants "cannot sustain an action for intentional interference with an inheritance under Pennsylvania law." *Id.* at 837.

In *Fielder*, we also discussed the appellant's "invitation to adopt the cause of action set forth in section 744B of the Restatement (Second) of Torts," and declined to do so, noting that "any such change in the law is beyond the mandate of this Court." *Id.* at 838 (quoting *Eckman v. Erie Ins. Exch.*, 21 A.3d 1203, 1209 (Pa. Super. 2011) ("This Court is of course bound by existing precedent under the doctrine of *stare decisis*.") (additional citations omitted)). "To the extent that *dicta* from our opinion in *Hollywood* could be read to suggest a willingness on the part of this Court to consider adopting the cause of action prescribed in the Restatement where intentional tortious conduct is alleged, we are neither obligated nor inclined to do so here." *Id.* (citing *Hollywood*, 859 A.2d at 478).

While we find **Fielder** controlling, it is important to recognize that while **Fielder** addressed *inter vivos* transfers of property, the action challenging those *inter vivos* transfers in **Fielder** was brought following the decedent's death. By contrast, Appellants are challenging *inter vivos* actions taken by June who, to our knowledge, is very much alive. Even if June experienced health issues in 2016 or 2017, she had recovered from those issues long before agreeing to settle and discontinue her suit against Elder, Jr. and Lori Sue. There is no evidence to suggest she was not competent to make decisions leading to that settlement.

The trial court explored whether an action for intentional interference with an expectancy of inheritance may be filed prior to the death of a testator under circumstances where a remedy would be unavailable or inadequate. Finding no Pennsylvania case law addressing the question—and noting the parties did not cite any such controlling authority, the court considered the Florida case of **Whalen v. Prosser**, 719 So.2d 2 (Fla. 2d DCA 1998), for its persuasive value. There, the court reasoned that, while "allowing an action prior to the testator's death might simplify proof concerning the issue of interference, it would make the issues of causation and damages even more speculative and would present other difficulties." Trial Court Opinion, 7/31/18, at 10 (quoting **Whalen**, 719 So.2d at 5).

Citing both "practical and theoretical" reasons for its decision not to permit a pre-death action, the **Whalen** court explained:

As a matter of legal theory, one typically has no protectable interest in a mere expectancy. A competent testator is free to change his or her estate plan as often as he or she wishes. There is no guarantee that the testator's estate will contain any assets at the time of a future death. Thus, prior to death, the hope of an inheritance is not sufficiently concrete to create a property right. The disappointed beneficiary only obtains "vested" rights when the testator dies. We are not inclined to believe that proposed beneficiaries in earlier estate plans, such as the Whalens, should be permitted to sue the new beneficiaries for mental pain and suffering, and possibly punitive damages, when the testator is alive, competent, and entitled to exercise her own testamentary rights.

Interference with an expectancy is an unusual tort because the beneficiary is authorized to sue to recover damages primarily to protect the testator's interest rather than the disappointed beneficiary's expectations. The fraud, duress, undue influence, or other independent tortious conduct required for this tort is directed at the testator. The beneficiary is not directly defrauded or unduly influenced; the testator is. Thus, the common law court has created this cause of action not primarily to protect the beneficiary's inchoate rights, but to protect the deceased testator's former right to dispose of property freely and without improper interference. In a sense, the beneficiary's action is derivative of the testator's rights.

    . . .

From a practical perspective, a pre-death tort would create numerous problems. The testator would be a mere witness, asked to testify about private conferences with her attorney. The action could concern a testator who was relatively young and in good health. Indeed, if the change in the will is the event that damages an unvested expectation, then the statute of limitations could conceivably expire long before the testator dies. A nonfamily action could be filed by a charity, a family employee, or a friend who received some small bequest in an earlier will. Damages would be extraordinarily difficult to quantify. Ironically, the lawsuit itself might cause an annoyed testator to disinherit both parties.

**Whalen**, 719 So.2d at 5-6 (citations and footnotes omitted).

Finding **Whalen** persuasive and adopting its reasoning, the trial court concluded that Appellants lacked standing to maintain claims for intentional interference with an inheritance and intentional interference with testamentary expectancy. Trial Court Opinion, 7/31/18, at 12. Further, because Appellants were not owners of the property at issue, they did not have "a substantial, direct and immediate interest in the outcome of litigation" with respect to the claims of undue influence, unjust enrichment, fraudulent inducement and civil conspiracy, such that they could continue to participate in the action with June, who was the sole remaining plaintiff after the preliminary objections were sustained. **Id.**

We agree with the trial court's determination that Appellants were not aggrieved so as to have standing to pursue claims against Elder, Jr. and Lori Sue. Therefore, we find no error of law in the trial court's July 31, 2018 ruling, sustaining their preliminary objections and dismissing Appellants from the case. Appellants' first three issues fail, as does the fourth issue insofar as it challenges the ruling regarding standing.

In their fourth and fifth issues, Appellants challenge the trial court's denial of their motion to intervene and stay the underlying litigation. Appellants' challenge lacks merit.

In **Allegheny Anesthesiology Assocs. v. Allegheny Gen. Hosp.**, 826 A.2d 886 (Pa. Super. 2003), we explained:

> It is well established that a "question of intervention is a matter
> within the sound discretion of the [trial court] and unless there is

a manifest abuse of such discretion, its exercise will not be interfered with on review." ***Wilson v. State Farm Mutual Auto. Ins. Co.***, 512 Pa. 486, 492, 517 A.2d 944, 947 (1986). In ruling upon a motion to intervene, a court must consider the following factors set forth in Pennsylvania Rule of Civil Procedure 2327:

> At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> > (1) the entry of a judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or
> > (2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or an officer thereof; or
> > (3) such a person could have joined as an original party in the action or could have been joined therein; or
> > (4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action.

Pa.R.C.P. 2327.

***Id.*** at 894-95 (additional citation omitted).

In this case, Appellants contend that Rule 2327(4) applies because their "legally enforceable interests as expectant beneficiaries" under June's Last Will and Testament would be affected if June were permitted to settle her case against Elder, Jr. and Lori Sue. Appellants' Brief at 21 (citing ***Fielder*** and ***Cardenas***). However, as June observes, in ***Fielder*** and ***Cardenas***, this Court "held that the tort of intentional interference with an inheritance can only be proven under certain circumstances" and because

"Appellants do not have a cause of action for intentional interference with an[] inheritance and intentional interference with testamentary expectancy, . . . Appellants do not have a legally enforceable interest being affected by this matter." June's Brief at 22 (some capitalization omitted). ***See also*** Brief of Elder, Jr. and Lori Sue at 15-16. Further, as Elder, Jr. and Lori Sue recognized, Rule 2329(3) provides that an application for intervention may be refused if the petitioner has unduly delayed in making an application for intervention. Here, the trial court ruled in July 2018 that Appellants lacked standing. Appellants did not seek to intervene until February 2020, after the remaining parties had agreed to a settlement. ***Id.*** at 15-17 (citing ***Nye v. Erie Insurance Exchange***, 503 A.2d 954 (Pa. Super. 1986) (on remand). Under the circumstances, we cannot find any manifest abuse of discretion on the part of the trial court for denying Appellant's motion to intervene. Appellants' fourth and fifth issues fail for lack of merit.

Because Appellants have failed to establish any basis for disturbing the orders of July 31, 2018 or March 13, 2020, we shall affirm them.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/10/2021

- 14 -