408 So.2d 216 (1981)
Evelyn G. DeWITT and Mabel M. DeWitt, Appellants,
v.
Estelle R. DUCE, Dallas W. Weaver and Mabel E. Weaver, Appellees.
No. 60594.
Supreme Court of Florida.
December 23, 1981.
*217 John R. Vintilla, Cleveland, Ohio, for appellants.
John W. Hewitt of Warwick, Campbell & Hewitt, Palm Beach, for appellees.
SUNDBERG, Chief Justice.
The former United States Court of Appeals for the Fifth Circuit certified to this Court the following question pursuant to article V, section 3(b)(6), Florida Constitution (1980), and section 25.031, Florida Statutes (1979), as involving an unsettled question of Florida law and as being determinative of this cause:
Does Florida law, statutory or otherwise, preclude plaintiffs from proving the essential elements of their claim for tortious interference with an inheritance where the alleged wrongfully procured will has been probated in a Florida court and plaintiffs had notice of the probate proceeding and an opportunity to contest the validity of the will therein but chose not to do so?
DeWitt v. Duce, 642 F.2d 159, 160 (5th Cir.1981). For the reasons set out below, we answer the question in the affirmative.
Arthur Welch died in 1975, and his will was admitted to probate in Florida. The DeWitts, plaintiffs-appellants, filed a Petition for Revocation of Probate of Welch's will, but voluntarily dismissed the petition before trial, choosing to take under the will. Two and one-half years later, the DeWitts filed a diversity action in federal court for wrongful interference with an inheritance. The DeWitts claimed that Estelle Duce, decedent's housekeeper, in league with Dallas and Mabel Weaver, exercised undue influence over Welch at a time he lacked testamentary capacity, causing him to revoke a prior will and replace it with the probated will, which was more favorable to Duce and the Weavers and correspondingly less favorable to the DeWitts. Appellants sought conveyance of Welch's residence and an accounting for residuary amounts, both of *218 which they would have received under the earlier will. They also sought punitive damages.
After one journey through the federal courts, the district court on remand dismissed the cause on the ground that section 733.103(2), Florida Statutes (1977),[1] foreclosed appellants from proving the facts necessary to establish their tort claim.
That statute provides as follows:
In any collateral action or proceeding relating to devised property, the probate of a will in Florida shall be conclusive of its due execution; that it was executed by a competent testator, free of fraud, duress, mistake, and undue influence; and of the fact that the will was unrevoked on the testator's death.
The district court reasoned that this statute prevented appellants from relitigating issues of undue influence and testamentary capacity, and thus prevented proof of elements vital to a claim of tortious interference with an expectancy.[2] On appeal, the former federal fifth circuit determined that this issue was more properly decided by this Court, a task we gratefully accept, applauding this spirit of federalism.

I.
Although a cause of action for wrongful interference with a testamentary expectancy has been recognized in this state,[3] the issue of when the tort action will be considered a collateral attack on the original probate decree has never been addressed, at least under the circumstances of this case.[4] Even though Florida courts have not directly confronted our case, courts from many other jurisdictions have squarely faced the issue of determining when a tortious interference action ought to be considered an impermissible collateral attack on the probate proceedings. The vast majority of these cases characterize as collateral a later tort action whenever the plaintiff has failed to pursue an adequate remedy in the probate proceedings. In Allen v. Lovell's Adm'x, 303 Ky. 238, 197 S.W.2d 424 (1946), the court would not allow a tort action predicated on a destroyed will because no effort was made by plaintiffs to have the destroyed will probated, which would have given plaintiffs adequate relief. A federal district court in a case similar to the one we face would not allow a tort action for wrongful deprivation of legacies because the plaintiff had not attempted to probate the prior favorable will in a two-will situation, and there was no showing that probate jurisdiction was impracticable. McGregor v. McGregor, 101 F. Supp. 848 (D.Colo. 1951), aff'd, 201 F.2d 528 (10th Cir.1953). Likewise, the North Carolina Supreme Court would not allow relief for tortious interference when plaintiff could not show that the fraud involved had prevented her from a fair chance at litigating that issue in probate proceedings. Johnson v. Stevenson, 269 N.C. 200, 152 S.E.2d 214 (1967). When plaintiff was the only heir and could have taken intestate by proving her claim of undue influence to defeat the will at probate, no later tort action is allowable to relitigate the undue influence claim. Brignati v. Medenwald, 315 Mass. 636, 53 N.E.2d 673 (1944). The rule is that if adequate relief is available in a probate proceeding, then that remedy must be exhausted before a tortious interference claim may be pursued. See Benedict v. Smith, 34 Conn.Sup. 63, 376 A.2d 774 (1977).[5]
*219 The converse of the above rule is equally well recognized. Thus when the plaintiff is unable to establish a destroyed will in a probate proceeding because there was only one witness to that will, relief by an action in tort for malicious destruction is proper. The issue of what the destroyed will contained never was decided in the probate court and hence is not res judicata for purposes of the tort action. Creek v. Laski, 248 Mich. 425, 227 N.W. 817 (1929). Recovery is allowed because of the equitable maxim that no wrong shall be without a remedy. See Dulin v. Bailey, 172 N.C. 608, 90 S.E. 689 (1916). If the defendant's fraud is not discovered until after probate, plaintiff is allowed to bring a later action for damages since relief in probate was impossible. Morton v. Petitt, 124 Ohio St. 241, 177 N.E. 591 (1931).[6] If defendant's tortious conduct had caused the testator to make an inter vivos conveyance to defendant of assets that would otherwise have been part of the estate, setting aside the will would be inappropriate redress and consequently a tort action is properly allowed. See Hegarty v. Hegarty, 52 F. Supp. 296 (D.Mass. 1943); Cyr v. Cote, 396 A.2d 1013 (Me. 1979).[7] A pattern may be developed from this line of cases which allows the later action for tortious interference only if the circumstances surrounding the tortious conduct effectively preclude adequate relief in the probate court.[8]

II.
In applying the general rule to Florida cases in this area, a certain consistency may be observed. Cases which allow the action for tortious interference with a testamentary expectancy are predicated on the inadequacy of probate remedies, although this is not articulated. Hence Davison v. Feuerherd, 391 So.2d 799 (Fla.2d DCA 1980), involved interference with expectancies from a revocable trust a matter apparently outside of probate jurisdiction. Watts v. Haun, 393 So.2d 54 (Fla.2d DCA 1981), involved interference with an inter vivos gift, a matter outside of the scope of probate. The progenitor of wrongful interference actions in Florida, Allen v. Leybourne, 190 So.2d 825 *220 (Fla.3d DCA 1966),[9] concerned tortious interference which prevented the testator from making a new will in favor of plaintiff as promised. The inadequacy of remedy is somewhat problematic in Allen since the plaintiff was a daughter of testator, and would take one-fourth the estate by intestacy if she had defeated the will. § 731.23, Fla. Stat. (1965). But the intent of testator prior to the interference seems to have been to leave the largest part of his estate to plaintiff, creating a marked disparity between her remedies in probate and in tort. See note 7 supra; Latham v. Father Divine.
The final case in Florida dealing with our problem is Kramer v. Freedman, 272 So.2d 195 (Fla.3d DCA 1973), which again involved the situation of the testator being prevented from making a promised will more favorable to plaintiff. The critical difference in Kramer, in which the court disallowed a later tort action, was that the plaintiff had an adequate probate remedy in a revocation proceeding. If the plaintiff had succeeded in defeating the will which left her nothing, she would have taken equally with her half-sisters by intestacy, exactly what the testator had promised. See § 731.23, Fla. Stat. (1971). The district court in Kramer reached the correct decision in denying the later tort action, but ignored the underlying reason for characterizing the tort action as collateral, i.e., the adequacy of probate remedy.[10]
We are aware of a relatively recent case from the federal tenth circuit dealing with these issues, and view our interpretation of Florida law as consistent with that case. In Peffer v. Bennett, 523 F.2d 1323 (10th Cir.1975), the court found that collateral estoppel did not apply to a later tort action brought for attorney's fees and expenses, because the earlier probate proceeding which had established undue influence did not necessarily establish intent for purposes of the interference action. But in Peffer the plaintiff had exhausted her probate remedy, and her later action was allowable only to recover damages for which probate could not have provided.

III.
Applying the general principles we have reviewed to the case at hand, one can readily see that appellants had an adequate remedy in the probate proceedings. The record reveals that the prior will which is favorable to appellants is extant. If this earlier will were the true testamentary embodiment of the testator's intent, appellants should simply have offered this will while attacking the later will on grounds of undue influence and lack of testamentary capacity. See In re Barret's Estate, 40 So.2d 125 (Fla. 1949). If they had succeeded in this challenge and established this earlier will, the probate court could have given them everything to which they claim entitlement.[11]
Finally, appellants vaguely assert that their due process rights will be violated if the tort action is not allowed. Yet the entire basis for disallowing the later tort action is the existence of adequate relief in probate. The state has an undeniable interest in settling title to property passing through probate. "`Consideration of public policy requires that all questions of succession to property be authoritatively settled.'" Davis v. Gaines, 104 U.S. 386, 392-93, *221 26 L.Ed. 757 (1881). The state's interest in an orderly succession of property can outweigh a party's equal protection or due process interests. See Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). Because section 733.103(2) is little more than the codification of the common-law rule against collateral attack and is predicated on principles of res judicata and collateral estoppel, we are unable to perceive how a rule so basic to our system of jurisprudence can deny appellants due process of law.
In sum, we find that appellants had an adequate remedy in probate with a fair opportunity to pursue it. Because they lacked assiduity in failing to avail themselves of this remedy, we interpret section 733.103(2) as barring appellants from a subsequent action in tort for wrongful interference with a testamentary expectancy, and accordingly answer the certified question in the affirmative.
It is so ordered.
ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] The 1977 statute is cited as it was the applicable statute at the time the initial collateral action was filed on July 20, 1978.
[2] See Restatement (Second) of Torts § 774B and Comment c (1979).
[3] See Davison v. Feuerherd, 391 So.2d 799 (Fla.2d DCA 1980); Allen v. Leybourne, 190 So.2d 825 (Fla.3d DCA 1966).
[4] One Florida case has applied principles of collateral estoppel to prevent relitigating in a subsequent tort action issues of duress, fraud, and undue influence which had already been decided in a probate proceeding. Kramer v. Freedman, 272 So.2d 195 (Fla.3d DCA 1973). Kramer differs from the present case, and is discussed below.
[5] See also Hall v. Hall, 91 Conn. 514, 100 A. 441 (1917) (no right to relitigate fraud on plaintiff as actionable in probate); Axe v. Wilson, 150 Kan. 794, 96 P.2d 880 (1939) (remedy is in probate when adequate, not in an action for damages); Holt v. Holt, 232 N.C. 497, 61 S.E.2d 448 (1950) (collateral attack on probate decree not allowable when issues could have been raised in a caveat proceeding). These cases are consistent with equitable notions that do not allow relief from a probate decree when the delay in attacking the decree was avoidable. See, e.g., Kieley v. McGlynn, 88 U.S. (21 Wall.) 503 (1875) (Broderick's Will). "The world must move on, and those who claim an interest in persons or things must be charged with knowledge of their status and condition, and of the vicissitudes to which they are subject. This is the foundation of all judicial proceedings in rem." Id. at 519.
[6] Equity generally allowed relief from a probate decree when fraud was uncovered or a suppressed will was discovered after the probate proceedings. See Gaines v. Chew, 43 U.S. (2 How.) 619, 11 L.Ed. 402 (1844); Seeds v. Seeds, 116 Ohio St. 144, 156 N.E. 193 (1927).
[7] the party injured by the fraud is one who would otherwise have been a legatee and the fraud took the form of inducing the testator to omit a gift to the aggrieved party and to include a gift to the party practicing the fraud, rejecting the fraudulently procured gift at probate would be ineffective to pass the property to the harmed party. Probate can strike from the will something that is in it as a result of fraud but cannot add to the will a provision that is not there nor can the probate court bring into being a will which the testator was prevented from making and executing by fraud. In such cases, since the remedy in the probate proceeding is inadequate, relief should be granted either in the form of a constructive trust, by permitting the fraudulent gift to stand and holding the defrauder, to whom legal title passes, as a constructive trustee for the victim of the fraud, or by giving the aggrieved party an action at law for damages against the defrauder.
1 W. Bowe & D. Parker, Page On Wills, § 14.8 at 706-07 (rev. 1960) (footnote omitted) (emphasis added). See Harmon v. Harmon, 404 A.2d 1020 (Me. 1979); Latham v. Father Divine, 299 N.Y. 22, 85 N.E.2d 168 (1949).
[8] The commentors are in agreement with the principle that a tortious interference action is allowable only when the inadequacy of probate remedies is apparent or established. See Comment, Tort Liability for Interference with Testamentary Expectancies in Decedent's Estates, 19 U.Kan. City L.Rev. 78, 85-89 (1950); Evans, Torts To Expectancies In Decedents' Estates, 93 U.Pa.L.Rev. 187, 202-05 (1944).
[9] Allen v. Leybourne relied heavily on Bohannon v. Wachovia Bank & Trust Co., 210 N.C. 679, 188 S.E. 390 (1936), in which plaintiff would inherit nothing through intestacy if he had succeeded in defeating a fraudulent will, which justified allowance of a remedy in tort.
[10] Cooke v. Cooke, 278 So.2d 683 (Fla.3d DCA 1973), is the only other Florida case in this area. Cooke is principally concerned with jury charges. The facts indicate, however, that a tort action was properly allowed since the plaintiff son had been promised two-thirds of his father's estate prior to the defendant's interference, and would have taken only one-half by intestacy had he defeated the will.
[11] For purposes of adequacy of relief we do not consider punitive damages as a valid expectation. Adequacy is predicated on what the probate court can give as compared to what the plaintiff reasonably expected from the testator prior to interference. Additionally, we can find no case authority allowing punitive damages in this type of action.