943 So.2d 276 (2006)
Andrew MARSHALL, Appellant,
v.
AMERISYS, INC., Appellee.
No. 3D06-1112.
District Court of Appeal of Florida, Third District.
November 29, 2006.
Andrew Marshall, in proper person.
Cole, Scott & Kissane and Scott A. Cole, Miami, for appellee.
Before CORTIÑAS and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
*278 PER CURIAM.
The plaintiff, Andrew Marshall ("Mr. Marshall"), appeals a final order dismissing with prejudice Counts I-VI of his first amended complaint against the defendant, Amerisys, Inc. ("Amerisys"), based upon the trial court's conclusion that Amerisys is immune from liability pursuant to Florida's Workers' Compensation Law, found in section 440.11, Florida Statutes (2004). Because we find that the allegations in Mr. Marshall's first amended complaint do not truly rise to the level of a separate and independent intentional tort, we affirm.
A ruling on a motion to dismiss for failure to state a cause of action involves an issue of law reviewable on appeal by the de novo standard of review. Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So.2d 204, 206 (Fla. 3d DCA 2003). In determining the merits of a motion to dismiss, the court is confined to the four corners of the complaint, including the attachments thereto, the allegations of which must be accepted as true and considered in the light most favorable to the nonmoving party. Id.; Coriat v. Global Assurance Group, Inc., 862 So.2d 743, 743 (Fla. 3d DCA 2003).
Considering the allegations in the first amended complaint, including the attachments thereto, in the light most favorable to Mr. Marshall and accepting them as true, the claims against Amerisys are based upon the following pertinent facts.
On March 20, 2002, Mr. Marshall, while under the employ of the City of Miami ("City"), was involved in a motor vehicle accident. As a result of the accident, Mr. Marshall suffered substantial multiple injuries and became significantly disabled. Shortly after the accident, Mr. Marshall began receiving workers' compensation benefits through the City's Risk Management Department, which handled the City's workers' compensation claims at the time. Sometime in late October 2003, Amerisys became the managed care systems administrator for the City's ongoing workers' compensation claims and Gallagher Basset Services, Inc. ("Gallagher Bassett") became the claims administrator for the City's new claims. On October 31, 2003, Amerisys thus took over the handling of Mr. Marshall's workers' compensation claims and assigned Chandra Wilson ("Ms. Wilson"), as the nurse case manager for his claims.
In early November 2003, Mr. Marshall, frustrated with the handling of his claims, told Ms. Wilson that he had had many problems obtaining benefits and requested information regarding Amerisys' grievance procedures. Ms. Wilson responded by requesting all of Mr. Marshall's previous grievances and told him that she would review them and assist him accordingly. Mr. Marshall also informed Ms. Wilson that "he needed to talk out his anger resulting from [the] fraudulent administration of his workers' compensation claim as he was concerned that he might become destructive if his anger got out of hand." Ms. Wilson asked Mr. Marshall what he meant by "destructive," to which he responded, "I know how to make bombs and silencers, how's that for destructive[?]"
In an attempt to get help in the handling of Mr. Marshall's claims, Ms. Wilson, via e-mail, first contacted Angela Breadwood ("Ms. Breadwood"), a supervisor at the City's Risk Management Department, and, in pertinent part, stated that Mr. Marshall was "pissed and is making bombs and silencers." Ms. Breadwood forwarded this e-mail to Mimi Turin, an assistant city attorney for the City, who subsequently forwarded the e-mail to a detective at the Miami Police Department, and a formal police investigation into the matter commenced.[1] *279 Ms. Wilson also sent an e-mail to a claims adjuster at Gallagher Bassett requesting help with Mr. Marshall's claims and stated in the e-mail that Mr. Marshall had informed her that he was home "building bombs."
Mr. Marshall filed his first amended complaint against Amerisys, under the theory of respondeat superior for Ms. Wilson's alleged misconduct, and asserted that Amerisys (1) committed a negligence per se violation of section 817.49, Florida Statutes, by falsely accusing him of a crime; (2) committed defamation by falsely accusing him of a crime; (3) committed libel per se by writing e-mails falsely accusing him of a crime; (4) committed fraud under section 440.105(4)(b)(1), Florida Statutes, by lying to him about not having formal grievance procedures; (5) committed a negligence per se violation of section 440.134(15), Florida Statutes, by failing to have a grievance procedure to address workers' compensation claims; and (6) committed intentional infliction of emotional distress by falsely accusing him of a crime.
Amerisys moved to dismiss the first amended complaint for failure to state a cause of action, claiming statutory immunity under chapter 440, Florida Statutes, as Florida's Workers' Compensation Law provides the exclusive remedy for claims or grievances arising out of a workers' compensation claim and claiming that the complaint further fails to state a cause of action under the theories of a negligence per se violation of section 817.49, Florida Statutes, defamation, and libel, as the statements forming the basis of these counts are substantially true. The trial court agreed with Amerisys and dismissed with prejudice all six counts of Mr. Marshall's first amended complaint.
Looking, as we must, solely to the allegations of the first amended complaint and the attachments thereto, accepting them as true, and considering them in the light most favorable to Mr. Marshall, we affirm the dismissal of all counts as Mr. Marshall's allegations do not truly rise to the level of a separate and independent intentional tort. As Mr. Marshall correctly asserts on appeal, the Florida Supreme Court in Aguilera v. Inservices, Inc., 905 So.2d 84 (Fla.2005), held that Florida's Workers' Compensation Law does not provide statutory immunity from an employee's valid intentional tort claims. Aguilera, 905 So.2d at 91-93. However, the Aguilera Court emphasized that in reaching this conclusion, it did not "discredit the long established rule that the conduct alleged by an employee must rise to the level tantamount to intentional tortious conduct to preclude an insurance carrier from prevailing with statutory immunity. An employee's complaint must, indeed, allege conduct that is or is tantamount to an independent tort." Id. at 95. Furthermore, "[m]inor delays in payments, and conduct amounting to simple bad faith in claim handling procedures of the employee's compensation claim" are captured within the statutory immunity. Id. at 91. Florida's "workers' compensation legislation does immunize an insurance carrier for mere negligent conduct, simple bad faith, and minor delays in payment." Id. at 93 (emphasis added).[2]
*280 Thus, in analyzing Mr. Marshall's allegations, we must determine whether such allegations amount to mere negligent conduct, a mere delay in payments, simple bad faith, or if they truly rise to the level of a separate and independent intentional tort. We conclude that Ms. Wilson's alleged misconduct does not rise to the level of a separate and independent intentional tort. At best, Ms. Wilson's alleged conduct amounts to simple negligence. Ms. Wilson's statements about Mr. Marshall "making bombs and silencers," read in context, do not demonstrate tortious intent or bad faith, but instead demonstrate concern regarding Mr. Marshall's statements to her and a request or inquiry from her superiors on how to best handle Mr. Marshall and his grievances. In any event, Ms. Wilson's statements, although not quoting verbatim what Mr. Marshall admits he said, are substantially true. See Smith v. Cuban Am. Nat'l Found., 731 So.2d 702, 706 (Fla. 3d DCA 1999)("Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the `gist' or the `sting' of the statement is true."). Similarly, as to Ms. Wilson's statements, or lack thereof, to Mr. Marshall about Amerisys' grievance procedures, we conclude that Mr. Marshall's allegations again fail to rise to the level of an independent intentional tort.
As to Mr. Marshall's claim against Amerisys for intentional infliction of emotional distress, we conclude that Mr. Marshall has also failed to state a cause of action sufficient to amount to an independent intentional tort. Looking at the factual allegations in the light most favorable to Mr. Marshall, we conclude that Ms. Wilson's conduct "is not the type of conduct that is so outrageous in character and extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized society." Valdes v. GAB Robins N. Am., Inc., 924 So.2d 862, 866 (Fla. 3d DCA 2006); see also Metro. Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla.1985)(specifying that liability for intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"). Accordingly, we agree that Mr. Marshall's first amended complaint was properly dismissed with prejudice.
Affirmed.
NOTES
[1] The attachments to the first amended complaint establish that the Miami Police Department did not find sufficient evidence to file criminal charges against Mr. Marshall for the statements he made to Ms. Wilson concerning "making bombs and silencers."
[2] Mr. Marshall alleges that because Amerisys is a "managed care arranger," it cannot avail itself of the statutory immunity available under section 440.11, Florida Statutes, as this statutory immunity only applies to employers, employees, and insurance carriers. Without reaching any conclusion as to whether or not Amerisys is in fact a "managed care arranger" or an "insurance carrier," Mr. Marshall throughout his first amended complaint complains about Amerisys not authorizing certain payments for his workers' compensation claims and rejecting others. Thus, it seems disingenuous to us that he even attempts to use this argument. When it is convenient for Mr. Marshall, Amerisys is the insurer responsible for making payments that it "wrongfully" rejected or denied, yet, he argues that Amerisys is not an insurance carrier for purposes of the statutory workers' compensation immunity.