952 So.2d 1231 (2007)
Edward A. SCHILLING, Appellant,
v.
Maria HERRERA, Appellee.
No. 3D06-1220.
District Court of Appeal of Florida, Third District.
April 4, 2007.
*1232 Adrian P. Thomas and Brandan J. Pratt, Fort Lauderdale, for appellant.
Robert S. Glazier; Clark D. Mervis, Miami, for appellee.
Before FLETCHER, SHEPHERD, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
The plaintiff, Edward A. Schilling ("Mr. Schilling"), appeals from an order granting the defendant Maria Herrera's ("Ms. Herrera") motion to dismiss the amended complaint with prejudice based on the trial court's finding that the amended complaint fails to state a cause of action and that Mr. Schilling is barred from filing to action because he failed to exhaust his probate, remedies. We disagree as to both findings and, therefore, reverse and remand for further proceedings.

PROCEDURAL HISTORY
Mr. Schilling, the decedent's brother, sued Ms. Herrera, the decedent's caretaker, for intentional interference with an expectancy of inheritance. Ms. Herrera moved to dismiss the complaint, arguing that Mr. Schilling failed to state a cause of action and that he was barred from filing his claim because he failed to exhaust his probate remedies. The trial court granted the motion to dismiss without prejudice.
Thereafter, Mr. Schilling filed an amended complaint asserting the same cause of action against Ms. Herrera. The amended complaint alleges that in December 1996, Mignonne Helen Schilling (the decedent) executed her Last Will and Testament, naming her brother and only heir-at-law, *1233 Mr. Schilling, as her personal representative and sole beneficiary, and in May 1997, she executed a Durable Power of Attorney, naming Mr. Schilling as her attorney-in-fact.
In December 1999, the decedent was diagnosed with renal disease, resulting in several hospitalizations. During this period, Mr. Schilling, who resides in New Jersey, traveled to Florida to assist the decedent. In January 2000, the decedent executed a Power of Attorney for Health Care, naming Mr. Schilling as her attorney-in-fact for health care decisions.
On January 12, 2001, when the decedent was once again hospitalized, Mr. Schilling traveled to Florida to make arrangements for the decedent's care. After being released from the hospital, the decedent was admitted to a rehabilitation hospital, then to a health care center, and then to the Clairidge House for rehabilitation. While at the Clairidge House, Ms. Herrera became involved in the decedent's care, and when the decedent was discharged from the Clairidge House on December 16, 2001, Ms. Herrera notified Mr. Schilling.
After being discharged from the Clairidge House, the decedent returned to her apartment, and Ms. Herrera began to care for her on an "occasional, as needed basis." In 2003, when the decedent's condition worsened and she was in need of additional care, Ms. Herrera converted her garage into a bedroom, and the decedent moved in. The decedent paid Ms. Herrera rent and for her services as caregiver.
When Mr. Schilling spoke to Ms. Herrera over the phone, Ms. Herrera complained that she was not getting paid enough to take care of the decedent, and on April 10, 2003, Mr. Schilling sent Ms. Herrera money. While living in the converted garage, the decedent became completely dependent on Ms. Herrera. In September 2003, without Mr. Schilling's knowledge, Ms. Herrera convinced the decedent to prepare and execute a new Power of Attorney, naming Ms. Herrera as attorney-in-fact, and to execute a new Last Will and Testament naming Ms. Herrera as personal representative and sole beneficiary of the decedent's estate.
Mr. Schilling visited the decedent in March of 2004. On August 6, 2004, the decedent died at Ms. Herrera's home.
On August 24, 2004, Ms. Herrera filed her Petition for Administration. On December 2, 2004, following the expiration of the creditor's period, Ms. Herrera petitioned for discharge of probate. On December 6, 2004, after the expiration of the creditor's period and after Ms. Herrera had petitioned the probate court for discharge of probate, Ms. Herrera notified Mr. Schilling for the first time that the decedent, his sister, had passed away on August 6, 2004. Shortly thereafter, in late December 2004, the Final Order of Discharge was entered by the probate court. Mr. Schilling alleges that prior to being notified of his sister's death on December 6, 2004, he attempted to contact the decedent through Ms. Herrera, but Ms. Herrera did not return his calls until the conclusion of probate proceedings and did not inform him of his sister's death, thereby depriving him of both the knowledge of the decedent's death and the opportunity of contesting the probate proceedings. Mr. Schilling further alleges that prior to the decedent's death, Ms. Herrera regularly did not immediately return his phone calls, and that Ms. Herrera's "intentional silence was part of a calculated scheme to prevent [Mr.] Schilling from contesting the Estate of Decedent, and was intended to induce [Mr.] Schilling to refrain from acting in his interests to contest the probate proceedings in a timely fashion, as [Mr.] Schilling was used to long delays in contact with [Ms.] *1234 Herrera, and did not suspect that the delay was intended to fraudulently induce [Mr.] Schilling to refrain from acting on his own behalf." Finally, Mr. Schilling alleges that he expected to inherit the decedent's estate because he was the decedent's only heir-at-law and because he was named as the sole beneficiary in the 1996 will; Ms. Herrera's fraudulent actions prevented him from receiving the decedent's estate, which he was entitled to; and but for Ms. Herrera's action of procuring the will naming her as sole beneficiary, he would have received the benefit of the estate.
After Mr. Schilling filed his amended complaint, Ms. Herrera filed a renewed motion to dismiss, arguing the same issues that she had raised in her previous motion to dismiss. The trial court granted the motion to dismiss with prejudice, finding that Ms. Herrera had no duty to notify Mr. Schilling of the decedent's death as Mr. Schilling did not hire Ms. Herrera to care for the decedent, and therefore, there was "no special relationship giving rise to a proactive responsibility to provide information. . . ." The trial court also found that Mr. Schilling was barred from filing a claim for intentional interference with an expectancy of inheritance because he failed to exhaust his probate remedies.

LEGAL ANALYSIS
A trial court's ruling on a motion to dismiss for failure to state a cause of action is an issue of law, and therefore, our standard of review is de novo. Roos v. Morrison, 913 So.2d 59, 63 (Fla. 1st DCA 2005); Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So.2d 204, 206 (Fla. 3d DCA 2003). This court "must accept the facts alleged in a complaint as true when reviewing an order that determines the sufficiency of the complaint." Warren ex rel. Brassell v. K-Mart Corp., 765 So.2d 235, 236 (Fla. 1st DCA 2000); see also Marshall v. Amerisys, Inc., 943 So.2d 276, 278 (Fla. 3d DCA 2006)("In determining the merits of a motion to dismiss, the court is confined to the four corners of the complaint, including the attachments thereto, the allegations of which must be accepted as true and considered in the light most favorable to the nonmoving party.").
To state a cause of action for intentional interference with an expectancy of inheritance, the complaint must allege the following elements: (1) the existence of an expectancy; (2) intentional interference with the expectancy through tortious conduct; (3) causation; and (4) damages. Claveloux v. Bacotti, 778 So.2d 399, 400 (Fla. 2d DCA 2001)(citing Whalen v. Prosser, 719 So.2d 2, 5 (Fla. 2d DCA 1998)). The court in Whalen clearly explained that the purpose behind this tort is to protect the testator, not the beneficiary:
Interference with an expectancy is an unusual tort because the beneficiary is authorized to sue to recover damages primarily to protect the testator's interest rather than the disappointed beneficiary's expectations. The fraud, duress, undue influence, or other independent tortious conduct required for this tort is directed at the testator. The beneficiary is not directly defrauded or unduly influenced; the testator is. Thus, the common law court has created this cause of action not primarily to protect the beneficiary's inchoate rights, but to protect the deceased testator's former right to dispose of property freely and without improper interference. In a sense, the beneficiary's action is derivative of the testator's rights.
Whalen, 719 So.2d at 6.
In the instant case, the trial court's ruling was based on the fact that the amended complaint fails to allege that Ms. Herrera breached a legal duty owed to Mr. *1235 Schilling. However, as the Claveloux court noted, there are four elements for a cause of action for intentional interference with an expectancy of inheritance, and breach of a legal duty is not one of the elements. This is consistent with the Whalen court's explanation that the "fraud, duress, undue influence, or other independent tortious conduct required for this tort is directed at the testator. The beneficiary is not directly defrauded or unduly influenced; the testator is." Id. (emphasis added). We, therefore, review the amended complaint to determine if it sufficiently pleads a cause of action for intentional interference with an expectancy of inheritance.
In essence, the amended complaint alleges that Mr. Schilling was named as the sole beneficiary in the decedent's last will and testament; that based on this last will and testament, he expected to inherit the decedent's estate upon her death; that Ms. Herrera intentionally interfered with his expectancy of inheritance by "convincing" the decedent, while she was ill and completely dependent on Ms. Herrera, to execute a new last will and testament naming Ms. Herrera as the sole beneficiary; and that Ms. Herrera's "fraudulent actions" and "undue influence" prevented Mr. Schilling from inheriting the decedent's estate. Based on these well-pled allegations, we conclude that the amended complaint states a cause of action for intentional interference with an expectancy of inheritance. Therefore, the trial court erred, as a matter of law, in dismissing the amended complaint on that basis.
Mr. Schilling also contends that the trial court erred in finding that he was barred from filing a claim for intentional interference with an expectancy of inheritance as he failed to exhaust his probate remedies. We agree.
In finding that Mr. Schilling was barred from filing his action for intentional interference with an expectancy of inheritance, the trial court relied on DeWitt v. Duce, 408 So.2d 216 (Fla.1981). In DeWitt, the testator's will was admitted to probate after his death. Thereafter, the plaintiffs filed a petition for revocation of probate of the testator's will, but voluntarily dismissed the petition, choosing to take under the will instead of challenging the will in probate court. More than two years later, the plaintiffs filed their claim for intentional interference with an inheritance, arguing that the defendants exercised undue influence over the testator at a time when he lacked testamentary capacity, causing the testator to execute the probated will, which was less favorable to the plaintiffs and more favorable to the defendants than the testator's previous will. The trial court dismissed the action, finding that pursuant to section 733.103(2), Florida Statutes (1977), the plaintiffs were foreclosed from proving the facts necessary to establish a cause of action for intentional interference with an expectancy of inheritance. Section 733.103(2), Florida Statutes (1977), provides as follows:[1]
In any collateral action or proceeding relating to devised property, the probate of a will in Florida shall be conclusive of its due execution; that it was executed by a competent testator, free of fraud, duress, mistake, and undue influence; and of the fact that the will was unrevoked on the testator's death.
The decision was appealed to a federal district court, and the federal court determined it would be better for the Florida *1236 Supreme Court to decide the issue, certifying the following question to the Florida Supreme Court:
Does Florida law, statutory or otherwise, preclude plaintiffs from proving the essential elements of their claim for tortious interference with an inheritance where the alleged wrongfully procured will has been probated in a Florida court and plaintiffs had notice of the probate proceeding and an opportunity to contest the validity of the will therein but chose not to do so?
DeWitt, 408 So.2d at 216-17.
In answering the certified question in the affirmative, the Florida Supreme Court stated that "[t]he rule is that if adequate relief is available in a probate proceeding, then that remedy must be exhausted before a tortious interference claim may be pursued." Id. at 218. The Court, however, stated that an exception to this general rule is that "[i]f the defendant's fraud is not discovered until after probate, plaintiff is allowed to bring a later action for damages since relief in probate was impossible." Id. at 219. The Court also noted that "[c]ases which allow the action for tortious interference with a testamentary expectancy are predicated on the inadequacy of probate remedies. . . ." Id. In conclusion, the Florida Supreme Court held:
In sum, we find that [plaintiffs] had an adequate remedy in probate with a fair opportunity to pursue it. Because they lacked assiduity in failing to avail themselves of this remedy, we interpret section 733.103(2) as barring [plaintiffs] from a subsequent action in tort for wrongful interference with a testamentary expectancy, and accordingly answer the certified question in the affirmative.
Id. at 221. Therefore, the Court's holding that the plaintiffs were barred from pursuing their claim for intentional interference with an expectancy of inheritance, was based on the fact that the plaintiffs had an adequate remedy in probate; the plaintiffs had a fair opportunity to pursue their remedy; and the plaintiffs' failure to pursue their remedy was due to their lack of diligence.
We find that DeWitt is factually distinguishable, and therefore inapplicable. A review of the amended complaint reflects that Mr. Schilling has alleged two separate frauds. The first alleged fraud stems from Ms. Herrera's undue influence over the deceased in procuring the will, whereas the second alleged fraud stems from Ms. Herrera's actions in preventing Mr. Schilling from contesting the will in probate court. We acknowledge that pursuant to DeWitt, if only the first type of fraud was involved, Mr. Schilling's collateral attack of the will would be barred. However, language contained in DeWitt clearly indicates that a subsequent action for intentional interference with an expectancy of inheritance may be permitted where "the circumstances surrounding the tortious conduct effectively preclude adequate relief in the probate court." Id. at 219.
This issue was later addressed by the Fourth District in Ebeling v. Voltz, 454 So.2d 783 (Fla. 4th DCA 1984). In Ebeling, the plaintiffs filed an action against the defendant for intentional interference with an expectancy of inheritance, alleging that, although they knew of the probate proceeding, they did not contest the will in probate court because the defendant made fraudulent statements inducing them not to contest the will. The trial court granted the defendant's motion to dismiss, finding that pursuant to section 733.103, Florida Statutes (1983), the plaintiffs were barred from attacking the will. The Fourth District reversed, finding that "[e]xtrinsic fraud, or in other words, fraud alleged in the prevention of the will contest, *1237 as opposed to in the making of the will, would appear to be the type of circumstance that would preclude relief in the probate court." Id. The court noted that the fraud alleged in the complaint prevented the plaintiffs from pursuing the incapacity claim in the probate court, and therefore, the action "falls into the category of cases that DeWitt considers outside the purview of Section 733.103(2), Florida Statutes." Id.
In the instant case, we must accept the facts alleged by Mr. Schilling as true. He alleges in the amended complaint that when the decedent began to live in Ms. Herrera's home, pursuant to powers of attorney executed by the decedent, Mr. Schilling was the decedent's attorney-in-fact; throughout the decedent's numerous illnesses, Mr. Schilling made decisions regarding the decedent's care; Mr. Schilling traveled to Miami on numerous occasions to visit the decedent, whose condition progressively worsened; Mr. Schilling stayed in contact with Ms. Herrera while the decedent was living in her home; Mr. Schilling relied on Ms. Herrera to obtain information regarding the decedent; Mr. Schilling sent money to Ms. Herrera to pay for the decedent's care; after the decedent passed away, Mr. Schilling called Ms. Herrera numerous times, but she would not return his calls; and Ms. Herrera did not inform Mr. Schilling of his sister's death until after she petitioned for discharge of probate. As the facts in the amended complaint sufficiently allege that Mr. Schilling was prevented from contesting the will in the probate court due to Ms. Herrera's fraudulent conduct, we find that the trial court erred in finding that Mr. Schilling's claim for intentional interference with an expectancy of inheritance was barred.[2]
Accordingly, we reverse the order dismissing Mr. Schilling's amended complaint, and remand for further proceedings.
NOTES
[1] The 2005 version is substantially the same, except that the words "of the fact" have been eliminated.
[2] Ms. Herrera argues that although she did not inform Mr. Schilling of the decedent's death until after she petitioned for discharge of probate, there was no fraud as Mr. Schilling learned of the decedent's death prior to the entry of the Final Order of Discharge. We find that this argument lacks merit.