NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


GEORGE HENRY,                          )
                                       )
            Appellant,                 )
                                       )
v.                                     )        Case No. 2D15-2421
                                       )
MARGARET JONES,                        )
                                       )
            Appellee.                  )
_____ )

Opinion filed October 14, 2016.

Appeal from the Circuit Court for Sarasota
County; Kimberly C. Bonner, Judge.

Patrick B. Calcutt of Calcutt & Calcutt, P.A.,
Americus, Georgia, for Appellant.

Jordan L. Wallach of Jordan L. Wallach,
P.A., Sarasota, for Appellee.


CASANUEVA, Judge.

        George Henry appeals the trial court's order granting Margaret Jones'

motion for a new trial. The trial court ordered a new trial on two bases: first, the verdict

was contrary to the manifest weight of the evidence; second, the jury verdict constituted

an improper quotient verdict. Although we conclude that the trial court abused its

discretion in determining that the verdict constituted an improper use of a quotient

verdict, we affirm because the record supports the trial court's legal view of the weight of the evidence.

## I. FACTS

Mr. Henry obtained a $100,000 jury verdict for damages against his sister, Margaret Jones, on a theory that Mrs. Jones had tortiously interfered with Mr. Henry's expectancy of inheritance in their late mother's estate while acting as her caregiver. The mother moved in with Mrs. Jones and her family in late 2006 after falling and breaking her hip, and Mrs. Jones acted as the mother's caregiver until the mother's death in August 2009. Mr. Henry alleged that Mrs. Jones improperly diverted substantial sums of money to herself and other family members from the mother's funds while acting as her caregiver.

Mr. Henry presented evidence of 108 checks totaling $119,580.08, which represented the alleged improper diversions. Mr. Henry alleged that Mrs. Jones procured these funds for her own use by exercising undue influence over the mother. The checks were written from a checking account jointly held by Mrs. Jones and the mother, into which the mother had, over time, transferred $100,000 from a GNMA (Ginnie Mae) fund.[1] Mrs. Jones denied influencing the mother's financial decisions and testified that any checks she wrote were at the mother's direction.

Mr. Henry presented testimony of Dr. Randy Otto, a forensic psychologist. Dr. Otto testified that he reviewed the mother's medical records and determined that she had suffered from dementia of the Alzheimer's type. He testified that there was compelling evidence that the mother's decision-making capacity was significantly

---

[1]The transfers occurred in August 2006, January 2007, and May 2007.

impaired by the end of 2008, and possibly by March 2007, based on notes from a social worker, Dorothea Swee-Sykes, who visited Mrs. Jones' home at that time. Because of her cognitive impairments, Dr. Otto stated that the mother "was more than the average person vulnerable to be unduly influenced." Dr. Otto never met the mother, never spoke with any of her doctors or healthcare providers, and never spoke with Mrs. Jones. His opinions were based solely on his review of records.

Mr. Henry also presented the testimony of the social worker, Ms. Sykes. Ms. Sykes conducted one home visit in March 2007, when the home-health agency was about to conclude its treatment following the mother's fall. The social worker was sent to the home to discuss what long-term care options would be available for the mother after the agency left and to discuss support available for Mrs. Jones as the caregiver. Ms. Sykes expressed concern for Mrs. Jones as the sole caregiver, who was also caring for her sick husband. The social worker did not express concern over the care the mother had been receiving. Ms. Sykes testified that she arrived at the home around 9:00 a.m., and the mother was fast asleep. She awoke, stated her name and that she was staying with her daughter, and then fell back to sleep. Ms. Sykes did not disturb her after that and had no further interaction with the mother.

Neither Mr. Henry nor any of his witnesses identified any actions taken by Mrs. Jones that might constitute undue influence. When asked what facts supported his contention that Mrs. Jones exerted undue influence over the mother, Mr. Henry responded: "She controlled my mother because my mother lived with her and had Alzheimer's."

## II. DISCUSSION

Where a trial court orders a new trial, we review that decision under an abuse of discretion standard. Moore v. Gillett, 96 So. 3d 933, 938 (Fla. 2d DCA 2012).

> Moreover, "it takes a stronger showing of error in order to reverse an order granting a new trial than an order denying a new trial." Thus we begin with the presumption that the trial court properly exercised its discretion, and we will not disturb the trial court's ruling absent a clear abuse of that discretion. However, "such orders must nevertheless be supported by the record or by findings of influence outside the record."

Id. at 938 (citation omitted) (first quoting Harris v. Grunow, 71 So. 3d 186, 188 (Fla. 3d DCA 2011); and then quoting Reynolds v. Towne Mgmt. of Fla., Inc., 426 So. 2d 1011, 1013 (Fla. 2d DCA 1983)).

We first discuss the trial court's finding that the verdict constituted an impermissible quotient verdict.

> A verdict becomes an impermissible quotient verdict where each juror states the amount of damages he or she considers proper, the total is then computed and the sum divided by the number of jurors to determine the amount of the verdict, and the jurors have agreed in advance to be bound by the results of such a procedure.

Albertsons, Inc. v. Johnson, 442 So. 2d 371, 372 (Fla. 2d DCA 1983); see also Niebla v. Flying Tigers Line, Inc., 533 So. 2d 816, 816-17 (Fla. 3d DCA 1988). To overturn a verdict on the grounds of a quotient verdict, "it is insufficient to show merely that the jurors used the quotient process at some stage of their deliberations and that their verdict corresponded exactly or approximately to the amount of the quotient." Cromarty v. Ford Motor Co., 341 So. 2d 507, 509 (Fla. 1976). "[T]he moving party must establish by clear and convincing evidence that the jurors, prior to calculating the quotient figure,

- 4 -

agreed to be bound by the figure as their final verdict." Greens to You, Inc. v. Gavelek, 967 So. 2d 318, 321 (Fla. 3d DCA 2007).

Here, the trial court found:

It is evident from the questions posed by the jury during deliberations that they had reached an agreement as to a certain monetary amount prior to rendering the verdict and asked for instructions on how to answer certain questions in order to obtain that net result, without regard for the actual evidence.

The jury question evidencing a prior agreement stated, in part: "We agree that GMMA [sic] fund equaling $100,000.00 should have never been removed from the Trust. Therefore, George Henry should have been a recipient of 25 percent of that money." The jury then reached a verdict totaling $100,000.

We conclude that the jury question alone is insufficient to establish the utilization of an improper quotient verdict. It evidences neither the use of the forbidden averaging process nor an agreement to be bound by the result thereof. No other evidence was presented that could support the trial court's conclusion of a quotient verdict. Cf. Gavelek, 967 So. 2d at 321 (noting that depositions of jurors were introduced at the hearing on the motion for new trial); Niebla, 533 So. 2d at 816 (noting that the trial court heard testimony from various jurors as to their agreement to be bound by a quotient verdict). For this reason, the trial court abused its discretion in awarding a new trial based upon an alleged quotient verdict.

Next, we address the trial court's determination that the manifest weight of the evidence did not support the verdict. To prove a claim of intentional interference with an expectancy of inheritance, the plaintiff must show: "(1) the existence of an expectancy; (2) intentional interference with the expectancy through tortious conduct;

(3) causation; and (4) damages." Whalen v. Prosser, 719 So. 2d 2, 5 (Fla. 2d DCA 1998); see also Schilling v. Herrera, 952 So. 2d 1231, 1234 (Fla. 3d DCA 2007). The fraud, duress, undue influence, or other independent tortious conduct required for this tort is directed at the testator, and the disappointed beneficiary brings the action primarily to protect the testator's interests in freely disposing of his or her property. See All Children's Hosp. v. Owens, 754 So. 2d 802, 807 (Fla. 2d DCA 2000).

Here, Mr. Henry alleged that Mrs. Jones diverted funds from the mother's estate by exercising undue influence over the mother. "Undue influence must amount to 'over persuasion, duress, force, coercion, or artful or fraudulent contrivances to such an extent that there is a destruction of free agency and willpower of the testator.' " Estate of Kester v. Rocco, 117 So. 3d 1196, 1199 (Fla. 1st DCA 2013) (quoting Raimi v. Furlong, 702 So. 2d 1273, 1287 (Fla. 3d DCA 1997)). Neither Mr. Henry nor any of his witnesses testified to any such actions of Mrs. Jones.

The third jury question reflects the jury's agreement that the Ginnie Mae funds "should have never been removed from the Trust," and the verdict totals the amount removed from the Ginnie Mae fund. However, Mrs. Jones testified that the mother made the decision to transfer the Ginnie Mae funds and effectuated the transfers on her own, and there was no evidence to the contrary. Mr. Henry testified that he had no knowledge as to who made the transfers. Further, at least some of the transfers occurred prior to the time Dr. Otto opined that the mother's decision-making capacity was significantly impaired.

- 6 -

## III. CONCLUSION

As noted above, we presume that the trial court's exercise of discretion was proper absent a demonstration of a clear abuse of discretion, and a ruling "that is unsupported by the record constitutes a clear abuse of discretion." Moore, 96 So. 3d at 938. The record here supports the trial court's conclusion that the verdict was contrary to the manifest weight of the evidence. We therefore affirm the order granting a new trial on that basis.

Affirmed.


LaROSE and MORRIS, JJ., Concur.