DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THELMA MULVEY**,
Appellant,

v.

**SHEILA STEPHENS**, **JAMES CAMPBELL** and
**NANCY J. CAMPBELL,** husband and wife,
Appellees.

No. 4D17-1292

[June 27, 2018]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; James David Langford, Senior Judge; L.T. Case No. 432015CA000686CAAXMX.

Joshua D. Ferraro of Lesser, Lesser, Landy & Smith, West Palm Beach, for appellant.

Virginia P. Sherlock and Howard K. Heims of Littman, Sherlock & Heims, P.A., Stuart, for appellee Sheila Stephens.

KUNTZ, J.

Thelma Mulvey appeals a final judgment finding tortious interference with an expectancy and awarding $60,000 in damages to the appellee, Sheila Stephens. She raises two issues on appeal: the court erred in denying her motion for judgment notwithstanding the verdict (JNOV) because the plaintiff failed to introduce competent substantial evidence in support of her tortious interference claim; and the amount awarded in damages was inconsistent with the testimony. We agree that there was no competent evidence to support a claim for tortious interference with an expectancy. Because we reverse the court's order denying Thelma Mulvey's motion for JNOV and remand for entry of judgment in her favor, we need not address the second issue.

### *Background*

Jack Mulvey ("Decedent") died testate with two surviving children and a spouse. His first wife and one son, Kevin Mulvey, predeceased him. The

Decedent's daughter, Sheila Stephens ("Daughter"), sued the Decedent's second wife, Thelma Mulvey ("Widow"). The Daughter claimed the Widow exerted undue influence on the Decedent and interfered with her expected inheritance. To provide a general understanding of the issues, we break our background discussion in three parts: First, we discuss the Decedent's will and trust; second, the Daughter's attempt to challenge the will in the probate court; and finally, the trial at issue and the Daughter's claim for tortious interference with expectancy.

### i. The Decedent's Will and Trust

While married to his first wife, the Decedent established a revocable trust. The trust's assets included a piece of property located in St. Lucie County, known to the family as the "Ranch." The Decedent created the trust for the ultimate benefit of his children and grandchildren. His son, Kevin Mulvey, was the original trustee of the trust. After Kevin Mulvey's death, the Daughter became the successor trustee.

In 1999, after his first wife died, the Decedent married the Widow. Eight years later, after prior unsuccessful attempts to sell the Ranch, the Decedent and the Widow sold a portion of the Ranch to their friends. The initial sale price for the Ranch was $1,150,000, but $758,000 of the sale was in the form of a mortgage given from the buyers to the Decedent. Five months later, the mortgage was amended to prohibit the Decedent and the Widow from "selling, transferring, assigning or in any manner conveying any interest" in the mortgage. A second modification agreement reduced the principal due on the mortgage by $250,000.

In 2008, the Decedent restated his trust. According to the restated Trust, the Widow would receive $50,000; Kevin Mulvey would receive 16 acres of the Ranch; the Daughter would receive $65,000 cash; and his other son, Sean Mulvey, would receive $65,000 cash.

In 2010, the Decedent executed a self-proving will, which revoked all previous wills. The 2010 will gave the Widow the residue and remainder of the estate. Significantly, the 2010 will revoked a 2005 will, which was a pour-over will that distributed all assets to the successor trustee of his Trust.

### ii. The Daughter's Challenge to the 2010 Will in Probate Court

When the Decedent died in 2011, the Daughter petitioned the probate court for administration of a previous pour-over will executed in 2005, while seeking invalidation of the 2010 will. She argued the 2010 will was

the product of the Widow's undue influence on the Decedent, and she alleged that the Decedent lacked testamentary capacity when he executed the 2010 will. After a trial, the probate court found the 2010 will was valid and not the product of undue influence. According to the probate court, "[t]hough the decedent suffered physically, there was no credible, substantial evidence of mental impairment."

### iii. The Daughter's Complaint for Tortious Interference with Expectancy

After the proceedings in the probate court, the Daughter filed a complaint in the circuit court for tortious interference with expectancy.

The Daughter's claim proceeded to a jury trial. At trial, the Daughter testified that she heard the Widow make belittling comments to the Decedent and heard her say that "your kids hope you die so they get all your money." The Daughter also testified that after the Decedent's stroke in 2010, he required assistance with grooming, eating, and moving around. During this time, the Widow publicly commented on the number of times he needed her assistance.

As for the sale of the Ranch, the Daughter acknowledged that before its sale, she tried to sell the property for the Decedent. She learned about the sale only after the fact and, at that time, her understanding was the Decedent would receive mortgage payments during his lifetime, and his children would receive any remaining funds from those and any additional payments.

The Daughter stated that she had no evidence that the Widow forced the Decedent to sell the Ranch, and also acknowledged that she never heard the Widow lie to the Decedent. That is consistent with the testimony of each of the other witnesses at trial. Sean Mulvey, the Decedent's son, testified that although he once heard the Widow state "[y]ou're getting nothing out of what your father has," he never heard her lie to the Decedent or try to coerce the Decedent into leaving her any property. James Mulvey, the Decedent's grandson who had a significant relationship with his grandfather, testified that the Widow never tried to interfere with their relationship. He also never heard the Widow tell the Decedent to leave her the Ranch.

There was one other issue significant to the Daughter. The Daughter claims the Widow blocked her brother, Sean Mulvey, from talking to the Decedent while Sean was in prison for several years. The Daughter claims that the Widow blocked her brother from making collect calls to speak with

their father. Sean Mulvey testified that the Widow seemed to resent him and made it difficult for him to speak to the Decedent. However, he did not think his imprisonment changed the Decedent's views of him, and he believed the family would receive the Decedent's assets.

Finally, the Widow herself testified that she and the Decedent did not consolidate their finances. She did not know the Decedent had held the Ranch in a revocable trust. Her understanding was that the Decedent put the Ranch in the name of her and her husband because she loaned him a substantial sum of money and paid many of his bills.

The Widow moved for a directed verdict, arguing the Daughter had presented no evidence to support her claims for tortious interference. The court denied the motion and submitted the case to the jury. The jury found in favor of the Daughter and awarded her $60,000 in damages. The trial court denied the Widow's motion for judgment notwithstanding the verdict, issued a final judgment in accordance with the verdict, and the Widow appeals.

### Standard of Review

We review the court's denial of a motion for JNOV *de novo*. *Alterra Healthcare Corp. v. Campbell*, 78 So. 3d 595, 601 (Fla. 2d DCA 2011). A JNOV is appropriate only when there is no evidence upon which the jury could rely in finding for the non-moving party. *Id.*

### Analysis

A claim for tortious interference of a testamentary expectancy includes: "(1) the existence of an expectancy; (2) intentional interference with the expectancy through tortious conduct; (3) causation; and (4) damages." *Whalen v. Prosser*, 719 So. 2d 2, 5 (Fla. 2d DCA 1998) (citations omitted). "[T]he law permits a claim for tortious interference of a testamentary expectancy 'if the circumstances surrounding the tortious conduct effectively preclude adequate relief in the probate court.'" *Wolf v. Doll*, 229 So. 3d 1280, 1283 (Fla. 4th DCA 2017) (internal quotations omitted).

For example, in *DeWitt v. Duce*, 408 So. 2d 216, 219 (Fla. 1981), our supreme court held the plaintiffs had an adequate remedy to challenge a will in the probate court but failed to do so, barring any claims for tortious interference of expectancy. But the court recognized a distinction for trusts because a revocable trust is "apparently outside of probate jurisdiction." *DeWitt*, 408 So. 2d at 219 (citing *Davison v. Feuerherd*, 391 So. 2d 799 (Fla. 2d DCA 1980)). We have since recognized that "[t]here are

4

simply too many distinctions, both procedural and substantive, between wills and trusts, for the reasoning of *DeWitt*, and the purpose of section 733.103(2), as it was articulated in *DeWitt*, to preclude a claim for tortious interference with expectancy." *Martin v. Martin*, 687 So. 2d 903, 907–08 (Fla. 4th DCA 1997).[1]

This "evolving" tort emanates from the Restatement (Second) of Torts. *See DeWitt*, 408 So. 2d at 218 n.2; *see also* Restatement (Second) of Torts § 774B (Am. Law Inst. 1979) ("One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."). It is "an unusual tort because the beneficiary is authorized to sue to recover damages primarily to protect the testator's interest rather than the disappointed beneficiary's expectations." *Whalen*, 719 So. 2d at 6.

At issue in this appeal is the second element: intentional interference with expectancy through tortious conduct. The Widow argues that there was insufficient evidence to support the jury's verdict that she tortiously interfered with the Daughter's expectancy. She argues the Daughter failed to present any evidence to establish she committed a tort, or tortious conduct, against the Decedent. In response, the Daughter admits that although there was no direct evidence of the Widow's intentional interference with the expectancy, there was competent and substantial indirect evidence of the Widow's undue influence supporting the verdict.

Generally, "[u]ndue influence must amount to 'over persuasion, duress, force, coercion, or artful or fraudulent contrivances to such an extent that there is a destruction of free agency and willpower of the testator.'" *Henry v. Jones*, 202 So. 3d 129, 133 (Fla. 2d DCA 2016) (quoting *Estate of Kester v. Rocco*, 117 So. 3d 1196, 1199 (Fla. 1st DCA 2013)). Merely changing a document such as a trust or will is insufficient because undue influence requires some showing that the alleged tortfeasor took improper actions. *See Newman v. Brecher*, 887 So. 2d 384, 385 (Fla. 4th DCA 2004); Restatement (Second) of Torts § 774B cmt. c (1979) (stating that "one who by legitimate means merely persuades a person to disinherit a child and

---

[1] In *Martin*, we noted that the claim would still be barred by *DeWitt* "if the trust had been a testamentary disposition incorporated by reference in the will." 687 So. 2d at 906. Here, we question whether *DeWitt* permits the same parties to challenge the same purported tortious conduct in two separate actions, one in the probate court and one in the general civil division. But the Widow does not assert the probate court's decision has preclusive effect on the subsequent civil action. Thus, for purposes of this appeal, we assume it does not.

to leave the estate to the persuader instead is not liable to the child."). In other words, it requires actions that are independently tortious. *Id.* ("In the absence of conduct independently tortious, the cases to date have not imposed liability").

Here, there was no evidence of an independent tort committed by the Widow. The Daughter, the Decedent's son, and the Decedent's grandson all testified that they had no evidence the Widow interfered with the Decedent's property. The uncontradicted testimony was that the Widow did not even know the Decedent held the Ranch in a trust. The Ranch was removed from the trust and placed in his and the Widow's names because the Widow loaned him a substantial sum of money and "that was his way of paying it back." There is no other evidence that the Widow had any involvement with the Ranch's ownership or ever sought to exert influence over its ownership.

Nor was there any evidence the Widow lied to the Decedent. It is true that the Daughter testified the Widow made comments about assisting the Decedent after his stroke. But because the Decedent's stroke occurred after the transfer of the Ranch, so too did the comments. Similarly, the Daughter testified that the Widow interfered with her brother's attempts to speak to the Decedent from prison. But, the brother spoke to the Daughter and on occasion spoke to the Decedent. It is unclear whether these calls took place before or after the Ranch was transferred. Regardless, the Daughter could only state that she assumed the Widow blocked the son's calls from prison. Even so, the brother testified that there was no impact on his relationship with the Decedent.

### Conclusion

Because there was no evidence of tortious conduct by the Widow, the Daughter could not prevail on her claim for tortious interference with expectancy. The trial court erred when it denied the Widow's motion for judgment notwithstanding the verdict. Accordingly, we reverse the final judgment and remand with instructions to grant the Widow's motion for judgment notwithstanding the verdict.

*Reversed and remanded.*

TAYLOR and MAY, JJ., concur.

\*      \*      \*

**Not final until disposition of timely filed motion for rehearing.**

6